Frantz Equipment Company, Appellant, *v.* The Leo Butler Company.

460

Argued April 23, 1952.   Before Drew, C. J., Stern, Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

*Morris L. Weisberg,* with him *Harry Norman Ball,* for appellant.

*Manus McHugh,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 26, 1952:

Defendant, having purchased a hoist from plaintiff, refused to pay for it on the ground that after it was received and put into operation it was found to be in a materially defective condition and unfit for use. In this action to recover the purchase price the trial judge, sitting without a jury, found for defendant; exceptions were dismissed by the court en banc and from the judgment entered in favor of defendant plaintiff appeals.

Defendant had a contract with the City of Philadelphia for the construction of a portion of an interceptor sewer, for which purpose it required the use of a hoist. Plaintiff's salesman exhibited to defendant's manager a manufacturer's catalogue which contained the picture and advertisement of an "O.K. Hoist, Model Crown, No. FDD120B, 125 H.P. 6 cylinder, 18″ diameter hoisting drum, 1500 line pull, with three drums and swinger attachment complete, including 125 h.p. Hercules gasoline engine." Defendant's manager signed a written order for the purchase from plaintiff of such a machine, referring to it in those same terms. The hoist was manufactured by the O.K. Clutch and Machinery Company by whom it was sold to plaintiff, a dealer, and by the latter in turn to defendant. It was

to be delivered around the middle of October, 1948, but, notwithstanding defendant's urgent need for it on the job, it was not in fact delivered until the 17th of the following November. When it was unloaded by defendant, set upon foundations and a test made of its operation, the front swinger gears immediately disintegrated and the lever shaft became twisted so that it could not be operated. Upon being notified of this fact, the manufacturer replaced the gears, but, upon further testing, the machine again failed to work, this time because the clutch started to heat up after the hoist had been in operation for but a few hours. The manufacturer continued its efforts to repair the machine but the clutch heated so badly and was slipping to such a degree that the brakes would not hold and it was not safe to operate a boom; moreover brass started to come from the bushings in the drums. Notwithstanding attempts by the manufacturer to correct these conditions defendant still found that it could operate the hoist for only short periods each day; subsequently the machine broke down entirely due to the burning out of the clutch. All these facts were found by the trial judge upon competent testimony, and, notwithstanding repeated complaints by defendant, no adequate repairs and replacements were made. The court found—and its findings are binding upon us—that the "machine was inoperative because the clutch became burned out, the brakes were riding against the surface of the drum (metal against metal), the brakes were not centered properly over the drum so that only a portion of the braking surface was effective, the brass rivets were pulled out by the blow holes and pittings in the face of a bad casting being the braking surface of the drum, and the front drum never at any time would work because it was not hung properly and friction could not be applied." While the manufacturer was willing to make some of the obviously necessary repairs it refused,

according to the finding of the court, "to replace the drums themselves where the braking surface was pitted and had blow holes in the castings causing excessive wear on the brake bands, and refused to square the brake itself which caused the brass rivets to be torn out when the drum rubbed against the frame." The hoist being materially defective and wholly unfit for use, and all the attempts to put it into condition having proved futile, defendant gave written notice to plaintiff on December 28 that it rescinded the sale and that plaintiff should take the hoist back, and, since it could not carry on its excavating job—on which it had many men employed—without a hoist, it purchased one from another concern. Some time thereafter plaintiff, acting under an agreement of counsel that it might do so without prejudice, removed its hoist from the job, and it then brought the present action against defendant to recover the agreed-upon purchase price.

The contentions of plaintiff may be reduced to three asserted propositions: (1) that the sale of the hoist did not carry with it an implied warranty of merchantable quality; (2) that even if such a warranty might otherwise have arisen it was here negatived by the fact that the manufacturer's catalogue shown to defendant provided that all O.K. hoists were guaranteed against defective material and workmanship for the period of one year and all parts found defective would be replaced free of charge; plaintiff claims that defendant relied solely upon this express warranty; (3) that defendant did not notify plaintiff within a reasonable time of its intention to rescind the sale.

(1) The Uniform Sales Act of May 19, 1915, P. L. 543, §15, provides (clause second) that "Where the goods are bought by description from a seller who deals in goods of that description . . . there is an implied warranty that the goods shall be of merchantable quality;" and (clause fourth) that "In the case of a contract

to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." Plaintiff argues that the present sale was not a sale by description but the sale of a specified article under its trade name and that in the latter event there is no implied warranty that the goods will be of merchantable quality or fitness for any particular purpose. That there was no warranty in this case as to fitness for any particular purpose is conceded by defendant. But was there an implied warranty of merchantability? The difference between these two warranties is well stated in *Dunbar Bros. Co. v. Consolidated Iron-Steel Mfg. Co.*, 23 F. 2d 416, 419, as follows: "A warrant of merchantability is a warranty that the goods are reasonably fit for the *general* purpose for which they are sold, while a warranty of fitness is a warranty that the goods are suitable for the *special* purpose of the buyer, which will not be satisfied by mere fitness for general purposes." Whether the sale here be regarded as one "under a trade name" or "by description" (in fact it was both) is wholly immaterial since a designation by trade name is itself a "description" which makes applicable clause second of section 15 of the Act; indeed that clause covers all sales other than those in which the purchaser has examined the goods as provided in clause third; accordingly it has been held by overwhelming authority* that clause fourth of section 15

---

* *Giant Mfg. Co. v. Yates-American Mach. Co.*, 111 F. 2d 360, 365; *Loxtercamp v. Lininger Implement Co.*, 147 Iowa 29, 125 N. W. 830; *Outhwaite v. A. B. Knowlson Co.*, 259 Mich. 224, 227, 228, 242 N. W. 895, 896; *Parker v. S. G. Shaghalian & Co., Inc.*, 244 Mass. 19, 22, 138 N. E. 236, 238; *Raymond Syndicate, Inc., v. American Radio & Research Corporation*, 263 Mass. 147, 153, 160 N. E. 821, 824; *Botti v. Venice Grocery Co.*, 309 Mass. 450, 456-458, 35 N. E. 2d 491, 495; *Poulos v. Coco-Cola Bottling Company of Boston*, 322 Mass. 386, 389, 77 N. E. 2d 405, 407; *Ryan*

denying an implied warranty as to fitness for a particular purpose in the case of a sale under a trade name does not negative an implied warranty of merchantable quality from arising in the case of such a sale. "Though the buyer by selecting goods sold under a patent or trade name cannot have an implied warranty that they are fit for his special purpose he may nevertheless rely on the seller for furnishing goods that are properly manufactured and are fit for the general purpose for which they are manufactured. In such a case the statement of the English court is sound: 'The implied condition [i.e. warranty] that the goods are of merchantable quality applies to all goods bought from a seller who deals in goods of that description, whether they are sold under a patent or trade name or otherwise.' The American authorities under the Sales Act support the statement.": Williston on Sales (rev. ed.) Vol. 1, pp. 616, 617, §236a.

It is perfectly clear, then, that even if the sale be under a trade name there is implied an obligation on the part of the seller that the article delivered will be of the same quality, material, workmanship, and avail-

---

v. *Progressive Grocery Stores, Inc.*, 255 N. Y. 388, 175 N. E. 105; *Bencoe Exporting & Importing Co., Inc., v. The McGraw Tire & Rubber Co.*, 212 App. Div. (N. Y.) 136, 208 N. Y. S. 4; *Foley v. Liggett & Myers Tobacco Co.*, 241 N. Y. S. 233, 238, 239, (aff. 232 App. Div. 822, 249 N. Y. S. 924); *Kelvinator Sales Corporation v. Quabbin Improvement Co., Inc.*, 234 App. Div. (N. Y.) 96, 97, 254 N. Y. S. 123, 125; *Ganoung v. Daniel Reeves, Inc.*, 268 N. Y. S. 325, 327; *Dow Drug Co. v. Nieman*, 57 Ohio App. 190, 197-199, 13 N. E. 2d 130, 133, 134; *D'Onofrio v. First National Stores, Inc.*, 68 R. I. 144, 147, 148, 26 A. 2d 758, 759, 760; *Appalachian Power Co. v. Tate*, 90 W. Va. 428, 432, 433, 111 S. E. 150, 151. See also cases collected in 135 A. L. R., pp. 1393 et seq. (Annotation: "Implied warranty of merchantability under Uniform Sales Act in case of sale of goods by patent or trade name.") ; also 55 C. J. pp. 757, 758 and notes 95 and 98; p. 759 and notes, 17, 18. 19 and 20; p. 763 and notes 88 and 89.

ability for use as articles generally sold under that name. It would be wholly unreasonable to hold that, if one were to purchase, for example, an automobile under the trade name of "Ford" or "Buick" or "Cadillac" or the like, no implied warranty of merchantable quality could be asserted by the purchaser even though the particular car delivered was in such bad condition, so gravely defective in materials and construction, that it could not be operated at all and was wholly useless for the ordinary purpose which an automobile is designed to serve. The evidence presented by defendant in the present case established that, notwithstanding repeated attempts by the manufacturer to repair the hoist, it still could not be efficiently operated. Paraphrasing what was said in *Foley v. Liggett & Myers Tobacco Co.*, 241 N. Y. S. 233, 240, it was of no more use to defendant than would be to a purchaser a watch that would not keep time, a pen that would not write, or tobacco which would not smoke. Defendant was therefore justified in electing to rescind the sale.

(2) It is urged by plaintiff that even if an implied warranty of merchantable quality would ordinarily have arisen in this transaction its existence was negatived by defendant's knowledge of, and reliance upon, the guaranty in the manufacturer's catalogue against defective material and workmanship and the promise to replace defective parts free of charge. However, clause sixth of section 15 of the Sales Act provides that "An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith." Here there was nothing inconsistent between an implied warranty on the part of the dealer and the express warranty of the manufacturer, which latter could not be enforced against the dealer: *Sebastianelli v. Frank*, 108 Pa. Superior Ct. 550, 552, 165 A. 664, 665; (see also *Loxtercamp v. Lininger Implement Co.*, 147 Iowa 29, 125 N. W. 830).

Assuming, *arguendo*, that defendant could maintain an action against the manufacturer on the latter's express warranty notwithstanding the absence of any contractual relation between them, it is clear that such a right would not deprive defendant of a cause of action also against plaintiff—the party with whom it contracted—on the implied warranty of merchantability. Nor was there any fact or circumstance in connection with the negotiations for the purchase of the hoist that, either expressly or by the course of dealing between the parties, negatived plaintiff's obligation to provide a hoist capable of being operated and fit for the general purpose for which such a machine is designed.

(3) The Sales Act provides (section 69, clause third) that "Where the goods have been delivered to the buyer, he cannot rescind the sale . . . if he fails to notify the seller within a reasonable time of the election to rescind." What is a reasonable time within which to give such notice depends upon the circumstances of each case and is a question of law for the court: *Truscon Steel Co. v. Fuhrmann & Schmidt Brewing Co.*, 327 Pa. 10, 13, 192 A. 679, 680. Here it could not fairly be ascertained by defendant whether the hoist fulfilled the requirements of the contract until it had been tested by actual operation. The tests which were employed revealed defects of various kinds, and defendant properly gave to the manufacturer the opportunity to make such adjustments, repairs and replacements as might correct them; it was only after all such attempts were ineffectual that defendant became obliged to notify plaintiff of its election to rescind the sale. In *Kirk Johnson Co., Inc., v. Light,* 100 Pa. Superior Ct. 425, 427, 428, it was pointed out that where the article sold is a machine which is the subject of adjustment or repair the situation differs from one where defects or breaches of warranty are at once discoverable; it was there said, per KELLER, J., that "He

[defendant] was not bound to rescind the contract and insist on the instrument being removed as long as there was a reasonable likelihood of the plaintiff's being able to overcome the defects, and it desired the chance to do so. Plaintiff's continual attempts to fix the instrument, conformably to its guaranty, did not deprive defendant of his right to rescind as soon as he was satisfied that it could not be made to work satisfactorily." To the same effect: *Kaminsky v. Levine*, 106 Pa. Superior Ct. 278, 281, 161 A. 741, 742; *Hobart Manufacturing Co. v. Rodziewicz*, 125 Pa. Superior Ct. 240, 247, 248, 189 A. 580, 584.

The judgment is affirmed.