Knapp *v.* Willys-Ardmore, Inc., Appellant.

Argued October 1, 1953. Before RHODES, P. J., HIRT, RENO, ROSS and GUNTHER, JJ.

*Victor J. Roberts,* with him *High, Swartz, Childs & Roberts,* for appellant.

*Desmond J. McTighe,* with him *Jesse W. Beeghley, Jr.,* and *Duffy, McTighe & McElhone,* for appellees.

OPINION BY HIRT, J., November 11, 1953:

The plaintiffs on November 17, 1949, bought a new Willys-Overland Station Wagon from the defendant-dealer and paid the full purchase price of $1,910.40. Eight days later while Mabel F. Knapp was driving on Haverford Avenue in the Borough of Narberth, the steering mechanism, without warning, failed to func-

tion. The car, out of control, "pulled sharply to the right" over the curb and into a telephone pole. After the collision it was noted that the tie rod at the right end of the steering assembly had become disconnected and had dropped to the ground; further inspection disclosed that the rod had been bent and a connecting sleeve or turnbuckle had been broken. The car was removed from the scene of the collision by the defendant and it has since been in its possession.

Plaintiffs, shortly after the failure of the car, rescinded the sale and demanded a return of the purchase price or the delivery of a new car to them. The defendant refused to comply with either alternative demand but offered to repair the automobile and put it in as good condition as it was before the mishap. The offer was unacceptable to plaintiffs and they thereupon brought this action in assumpsit. The case was tried on the theory that defendant was bound to repay the purchase price to plaintiffs on the implied warranty that the automobile when sold was of merchantable quality. The jury found for the plaintiffs in the full amount of their claim with interest, and judgment was entered on the verdict. We are unable to find merit in defendant's contention, in this appeal, that the court erred in refusing to enter judgment n.o.v. The appeal is ruled by principles, enunciated in *Ebbert et al. v. Phila. Elec. Co.*, 126 Pa. Superior Ct. 351, 191 A. 384, (affirmed in 330 Pa. 257, 198 A. 323) and more recently applied in *Franz Equip. Co. v. The Leo Butler Co.*, 370 Pa. 459, 88 A. 2d 702.

The Sales Act of May 19, 1915, P. L. 543, in the second clause of §15, 69 PS §124, provides: "Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality".

Plaintiffs were interested in buying a station wagon but were not committed to any particular type. In the middle of October 1949 they went to defendant's place of business and were shown a Willys Station Wagon there on display. They were also taken for a ride in a similar car, used by defendant as a demonstrator and were given sales literature containing photographs and specifications in technical detail of various features of the car which it was alleged made for superior performance over other station wagons. In the light of the verdict, we are bound to take it as established that when plaintiffs subsequently decided to buy the car, they bought it "by description" within the purview of §15 of The Sales Act charging defendant with a warranty by implication that the car delivered was of merchantable quality. The fourth clause of §15 of the Act provides that "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose". But, under the holding of the *Franz* case, supra, p. 464, even if plaintiffs bought the car under the trade name of "Willys Station Wagon" the defendant is not relieved of an implied warranty of merchantable quality. The *Franz* case put that question to rest in this language: "The difference between these two warranties is well stated in Dunbar Bros. Co. v. Consolidated Iron-Steel Mfg. Co., 23 F. 2d 416, 419, as follows: 'A warrant of merchantability is a warranty that the goods are reasonably fit for the *general* purpose for which they are sold, while a warranty of fitness is a warranty that the goods are suitable for the *special* purpose of the buyer, which will not be satisfied by mere fitness for general purposes.' Whether the sale here be regarded as one 'under a trade name' or 'by description' (in fact it was both) is wholly immaterial

since a designation by trade name is itself a 'description' which makes applicable clause second of section 15 of the Act; indeed that clause covers all sales other than those in which the purchaser has examined the goods as provided in clause third; accordingly it has been held by overwhelming authority that clause fourth of section 15 denying an implied warranty as to fitness for a particular purpose in the case of a sale under a trade name does not negative an implied warranty of merchantable quality from arising in the case of such a sale".

Under the third clause of §69 of The Sales Act, 69 PS §314, a buyer may not rescind a sale "if he fails to notify the seller within a reasonable time of the election to rescind". Cf. *Tinius Olsen Test. Mch. Co. v. Wolf Co.*, 297 Pa. 153, 146 A. 541. The election in this case was timely and an action in assumpsit was proper to compel a return of the purchase price. The action in this class of cases may be either in trespass based on negligence (as in *Ebbert et al. v. Phila. Elec. Co.*, supra) or in assumpsit for breach of the covenant of warranty implied. *Loch et ux. v. Confair et ux.*, 361 Pa. 158, 63 A. 2d 24. Even if plaintiffs had chosen the wrong form of action the error could still be corrected by amendment. *Littler Exrx. et al. v. Dunbar et al.*, 365 Pa. 277, 74 A. 2d 650.

Plaintiffs have met the burden of establishing that the car was not of merchantable quality when it was delivered to them by the defendant. The speedometer on delivery, indicated that it then had been driven 23 miles. In the eight-day period following delivery, the plaintiffs in short trips drove the car for a total of 107 miles. According to plaintiffs' testimony the car during the whole of that period was used for pleasure only and was driven in a proper manner without incident and only on improved streets and highways. The

car was not involved in any accident and until the final failure there was nothing in the operation of the car that gave notice of a defect in the steering rod. From Mrs. Knapp's testimony, which the jury accepted, it is clear that immediately before the failure of the steering mechanism she was driving the car at a moderate speed, and that the car suddenly veered to the right over the curb and into a telephone pole, because of a break in the connection of the steering rod with the right wheel. That the car was defective *before* the collision does not rest for proof on this plaintiff's testimony alone. There is disinterested corroboration by the witness Wilmot who was driving his car in the opposite direction on Haverford Avenue. He testified that as he approached plaintiffs' car he observed that the right front wheel was "wobbling" and the car "seemed to go out of control" over the curb into the pole with the left front wheel still in the normal position for driving straight ahead. There also was a mechanic's testimony that there was a "break in the sleeve" of the tie rod and an upward bend in the rod caused by pressure from below and not from a force exerted head on. It is reasonable inference therefore from the testimony of these witnesses, to which the plaintiffs are entitled, that the car was defective when delivered to them and that the defects were not caused by subsequent conduct of the plaintiffs. In *Ebbert et al. v. Phila. Elec. Co.*, supra, p. 356, we said: "Proof of the factum probandum . . . [i.e., whether the mechanical defect existed at the time the machine was delivered] may not be based upon mere conjecture or guess work (Freedman v. Wagner & Karpeles, 73 Pa. Superior Ct. 180), yet it was not necessary to exclude every other possible cause which the ingenuity of counsel might suggest: Madden v. Great A. & P. Tea Co., 106 Pa. Superior Ct. 474, 162 A. 687; Gallivan v. Wark

Co., 288 Pa. 443, 456, 136 A. 223 . . . The test to be applied was whether the circumstances shown were such as would satisfy a reasonable and well balanced mind that the defective condition of the cam existed when the machine was delivered to plaintiffs: Strobel v. Park, 292 Pa. 200, 207, 140 A. 877. Taking into account the fact that the defendant offered no evidence in contradiction of plaintiffs' evidence we are convinced that the evidence was sufficient to meet the legal requirements for such proof." The testimony in the present case which the jury accepted meets the test to be applied. The proofs established a breach of the implied warranty of merchantable quality. *Fisher v. Sheppard*, 366 Pa. 347, 77 A. 2d 417 on which defendant relies is clearly distinguishable on its facts.

With delivery of the car defendant's salesman gave the plaintiffs a so-called "Willys-Overland Owner Service Policy" which specifically provided for the replacement by defendant of original equipment which "should prove faulty in either material or workmanship during the first 90 days after delivery". The fact that under this obligation of the defendant, the plaintiffs might have elected to keep the car and look to defendant for replacement of the defective steering rod, and repair of the resulting damage to the car, did not prevent them from rescinding the sale and suing in assumpsit for the amount paid. The sixth clause of §15 of The Sales Act provides: "An express warranty or condition does not negative a warranty or condition implied under this act unless consistent therewith". And again the *Franz* case, supra, p. 466, is authority for a construction of this clause to the effect that an implied warranty of merchantable quality is not negatived by a guaranty against defective material and workmanship and the promise to replace defective parts free of charge.

Finally, defendant is not entitled to a new trial because of the refusal of the court to withdraw a juror when a witness volunteered a reference to insurance. Defendant's witness Sadowski under direct examination testified that he was an automobile mechanic employed by defendant and that he was sent to the disabled Jeep Station Wagon on Haverford Avenue following its collision with a telephone pole. He testified that notwithstanding the disconnected tie rod and "the bent front wheel and everything" the Jeep could have been driven from the scene of the accident. And when, still on direct examination, he was asked: "Well then why didn't you drive it away from there?" he answered: "We ain't allowed to touch it. *Its an insurance claim* and its a defect in a part may be or so and we have to bring—" The witness then was interrupted by defendant's counsel who stated: "I didn't ask for that". Counsel however then moved for the withdrawal of a juror which was refused. Since the reference to insurance was brought out by defendant's counsel in examining his own witness, the defendant may not complain especially where as here the reference does not disclose nor could it fairly be inferred therefrom that the defendant was insured against liability of the class in issue in the case on trial. *Ellsworth v. Lauth,* 311 Pa. 286, 166 A. 855. Cf. *Cain v. Kohlman,* 344 Pa. 63, 22 A. 2d 667.

In this the last of three trials of this case the issues were adequately submitted to the jury on correct instructions as to the law. We find no reversible error in this record.

Judgment affirmed.