Thomas L. GEORGE and Albert S. Glover,
d/b/a Pioneer Brokerage & Sales
Co., Appellants,

v.

James E. WILLMAN, Appellee.

No. 234.

Supreme Court of Alaska.

Feb. 26, 1963.

Roger G. Connor, Juneau, for appellants.

R. Boochever, Faulkner, Banfield, Boochever & Doogan, Juneau, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

The appellee, Willman, purchased a Great Lakes Mobile Home trailer from appellants, George and Glover. The trailer and its contents were destroyed by fire. Willman sued appellants for the loss on theories of breach of implied warranty and negligence. The trial court found that the fire was caused by loose fuel line fittings, and concluded that since this defect existed at the time of sale, appellants had "breached an implied warranty of fitness that the trailer was suitable for the purposes intended." The court also found that appellants were neg-

ligent in failing to check the fittings before delivery of the trailer. Willman was awarded damages in the amount of $15,-577, and appellants have brought this appeal. The determinative questions are (1) whether there was an implied warranty under which appellants may be held liable for the loss; and (2) whether the evidence supports the finding that the fire was caused by loose fuel line fittings.

*Implied Warranty.*

The answer to the first question is governed by application of the Uniform Sales Act.[1] Section 29–1–45 A.C.L.A.1949 provides in part that—

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

The implied warranty of merchantable quality includes a warranty that goods are reasonably fit for the ordinary purposes for which they are used.[2] A mobile-home trailer is ordinarily used for the purpose of family living. It is not reasonably fit for that purpose when loose connections between the fuel line and an oil burning furnace permit oil to leak out and accumulate in the vicinity of the furnace and create a fire hazard. A trailer that is sold with such a defect is not of "merchantable quality", within the meaning of the statute.

But before an implied warranty can arise, the goods must have been "bought by description from a seller who deals in goods of that description." That was done here. The sales contract executed by Willman and appellants specified that he was purchasing a "55 x 10′ 2 Bedroom Mobilehome, Great Lakes Make, SA-FK-Winthrop

1. The Uniform Sales Act (§§ 29–1–1 through 29–1–189 ACLA 1949, as amended, SLA 1955, ch. 96, § 2), was in effect at the time the events in this case took place. It has since been repealed and superseded by the Uniform Commercial Code which became effective January 1, 1963. AS 45.05 (SLA 1962, ch. 114).

2. Burke v. Thomas, 15 Alaska 385, 392 (D.Alaska 1955); Prosser, The Implied Warranty of Merchantable Quality, 27 Minn.L.Rev. 117, 130–136 (1943); 1 Williston, Sales § 243 (rev. ed. 1948), and 1962 Supp. cases cited n. 12, at 122.

Model." Such a designation of an article by trade name is itself a description sufficient to meet the statutory requirement that the article be "bought by description" in order to give rise to an implied warranty.[3] And appellants dealt in "goods of that description", since they had been authorized to act as dealers in the sale of Great Lakes Mobile Homes by the manufacturer of that product.

Since Willman testified that he had looked the trailer over on several occasions before buying it, we must consider another provision of the sales act. Section 29–1–45(3) provides—

"If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

The loose oil line fittings were located underneath the furnace in a position where oil leaking from the fittings would seep into the insulation between the floor and bottom of the trailer. This is not a defect which Willman's examination of the trailer ought to have revealed. One who examines goods is chargeable only with the knowledge of open defects which should be obvious to a person with normal intelligence and powers of observation. Appellants may not escape their warranty of merchantable quality on the ground that Willman had inspected the trailer, for the reason that the defect was a hidden mechanical deficiency which would not be discernible by the ordinary person using reasonable care while looking over a trailer with a view toward purchasing it as a family home.

Appellants argue that there can be no implied warranty because the trailer was sold under its trade name, i. e. "Great Lakes Mobile Home." They refer to section 29–1–45(4) which provides that—

"In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

The warranty of fitness for a "particular purpose" is considered in a separate subdivision of the sales act.[4] We are not concerned with that type of warranty. The trailer was purchased for a general purpose—that of family living. It was not purchased for any special or particular purpose which would not have been satisfied by mere fitness for the general purpose.[5] We are concerned here only with the warranty of merchantable quality under section 29–1–45(2), and a sale of an article by trade name does not negate the implied warranty under that section.[6]

Appellants contend that the evidence is insufficient to support a finding that the fuel line defect existed at the time the trailer was sold. Willman had installed copper tubing from the oil tank to the end of a line that protruded about 6 inches from the bottom of the trailer, and which was connected at the other end to the fittings where the oil leak occurred. Appellants attempted to show that when Willman made this connection it was likely that he had twisted the fuel line leading up through the floor of the trailer and that this had caused the fittings to become loose.

3. Knapp v. Willys-Ardmore, Inc., 174 Pa. Super. 90, 100 A.2d 105, 107–108 (1953).

4. Section 29–1–45(1) provides: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

5. Dunbar Bros. Co. v. Consolidated Iron-Steel Mfg. Co., 23 F.2d 416, 417 (2d Cir.), cert. denied, 277 U.S. 599, 48 S.Ct. 560, 72 L.Ed. 1007 (1928); Kohn v. Ball, 36 Tenn.App. 281, 254 S.W.2d 755, 757 (1952).

6. Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 76, 75 A.L.R.2d 1 (1960); Kohn v. Ball, 36 Tenn.App. 281, 254 S.W.2d 755, 758 (1952); Pabellon v. Grace Line, Inc., 191 F.2d 169, 172 (2d Cir.), cert. denied, 342 U.S. 893, 72 S.Ct. 201, 96 L.Ed. 669 (1951).

Two retail dealers in trailers in the local area testified that the oil line and furnace fittings are generally loose and need to be tightened when trailers arrive from outside of Alaska; and one said that this was because the fittings jarred loose in transportation. George testified that he had not checked the fittings on Willman's trailer because this was the first new trailer that he had sold and he didn't know that the fittings needed to be checked. He admitted that if he had had adequate experience in dealing with trailers, he would have checked all fittings for tightness before delivering the trailer to Willman. Willman testified that when he made the fuel line connection he held the upper portion of the line steady with one wrench while he tightened the connection with another wrench, and that in view of this precaution there was no way that he could have loosened any fittings above the point where he made the connection.

From this evidence the trial judge was justified in finding that it was more probable that the fittings were loose at the time the trailer was delivered than that they were loosened by Willman's actions in connecting up the fuel line.

■ We hold that by virtue of the warranty of merchantable quality implied by law, appellants had a contract obligation to furnish Willman with a trailer that was reasonably fit for the purpose of family living, and that they breached their obligation by providing a trailer with loose connections in the oil line fittings adjacent to the furnace.

*Proximate Cause.*

■ The trial judge held that the fire was a result of oil leaking from the loose fittings in the fuel line. Appellants argue that the evidence was not sufficient to support that finding.

The insulation under the floor in the vicinity of the furnace was soaked with oil. A hole was burned through the floor in the vicinity of the furnace. A neighbor who first saw and reported the fire said it began in the vicinity of the front wheels, and the front wheels of the trailer appeared to be directly under the furnace. Fire Chief Morrison testified that the fire was caused by malfunction of the oil burner and oil line. He made an investigation the morning after the fire. Officer Dubber, state trooper who investigated the fire on the evening of the fire and the next day, concluded that the fire was "probably caused by a leakage of oil in the vicinity of the oil furnace." Considering all of this evidence, we cannot say that the judge's finding as to the cause of the fire was clearly erroneous.[7]

Appellants also argue that the court erred in finding them negligent in failing to check the fuel line fittings before sale of the trailer. We need not decide that point, since the judgment below is supported by a finding that appellants had breached their implied warranty of merchantable quality.

The judgment is affirmed.

7. Kraft v. Kraft, Opinion No. 103, 374 P.2d 413, 416 (Alaska 1962); Nordin v. Zimmer, Opinion No. 96, 373 P.2d 738, 742 (Alaska 1962).