Thomas O. McMEEKIN, a minor, by John O. McMeekin, guardian, and John O. McMeekin and Eleanor L. McMeekin, Plaintiffs.

v.

GIMBEL BROTHERS, INC., Defendant and Third-Party Plaintiff,

v.

The ESKA CORPORATION [1] and John O. McMeekin, Third-Party Defendants.

Civ. A. No. 60-766.

United States District Court
W. D. Pennsylvania.

Nov. 19, 1963.

Mercer & Buckley, Pittsburgh, Pa., for plaintiffs.

Reed & Egler, Pittsburgh, Pa., for defendant.

Weis & Weis, Pittsburgh, Pa., for third-party defendants.

MARSH, District Judge.

At the close of the plaintiffs' evidence in this diversity case, the court granted defendant's motion for a directed verdict, specifying as grounds therefor: (1) Insufficient evidence of causation, (2) failure to prove negligence, and (3) failure to prove a breach of warranty. Rule 50, Fed.R.Civ.P. Plaintiffs timely moved for a new trial. Rule 59, Fed.R.Civ.P. We think the motion should be denied.

1. The Eska Corporation was not served with process. Plaintiffs have sued this company in Iowa.

## Insufficient Evidence

At trial it was proved that an Eska rotary-type lawnmower, manufactured by The Eska Corporation, an Iowa corporation, was purchased by the plaintiff, John O. McMeekin, from the defendant, a retailer, on July 18, 1959. He used it for cutting his lawn throughout the remainder of the summer and fall of that year, and in the spring of 1960, two or three times prior to May 28, 1960. On that day, while he was cutting the lawn in front of his house, some unknown object penetrated the right eye of his 5-year-old son, the minor plaintiff, destroying the sight of that eye. Plaintiffs rely on circumstantial evidence to establish causation; their theory is that a small object was hurled through the grass chute at the right front of the mower with sufficient force to penetrate the eye of the child who, they contend, was on or near a small patio adjacent to the front door in the center of their ranch-type home.

When Mr. McMeekin was notified by his daughter, Lora, that an accident had happened, he was mowing the front lawn. Immediately prior to the notice, he had been cutting swaths parallel to the front of the house; the easterly end of these swaths being opposite the patio area in the center of the house and approximately 50 feet south of it (Exhibit V); as a swath was mowed to the west, the distance from the patio area progressively increased. He did not at any time observe the minor plaintiff on or near the patio or anywhere in the front yard, although he testified he was keeping a constant lookout for him. The last place he had seen the child was in a sand box at the rear of the house where there was no danger from the mower.

There was no proof of the position of the mower when the child allegedly was struck. Assuming that testimony based on sound rather than sight is adequate to prove the whereabouts of the child when he was injured, such testimony was conflicting. Mrs. McMeekin and Lora each testified to having heard him screaming. In Mrs. McMeekin's opinion the scream came from the patio area in the front center of the house.[2] In Lora's opinion the screaming came from "outside the garage, out in the garage".[3] Both women first saw the child in the house coming from the garage toward the living room holding his eye. No one saw him in the front of the house in the vicinity of the mower.

The mother's opinion, of doubtful probative value,[4] that the scream came from the patio area is the only evidence that the child was in the vicinity of the mower. Her opinion was contradicted by the opinion of Lora that the screaming came from in or near the garage. The entrance to the garage is on the east side of the house to the rear (Exhibit Y) about 15 feet from the sand box in back of the house.

Proof that the child was in the front yard in the vicinity of the mower was a major part of plaintiffs' primary evidential burden in establishing the cause of the accident. At the close of their evidence, the cause of the injury remained conjectural. On plaintiffs' own evidence the jury was left to speculate, without rational basis for judgment, whether or not an object thrown by the mower caused the injury. In these circumstances, we think a verdict should have been directed for defendant. Martin v. E. I. DuPont De Nemours & Co., Inc., 281 F.2d 801, 803 (3d Cir. 1960), citing Musleva v. Patton Clay Mfg. Co., 338 Pa. 249, 12

2. Transcript of June 12, 1963, at page 132.

3. Transcript of June 12, 1963, at page 161.

4. When Mrs. McMeekin heard the scream she was lying down in a bedroom in the west wing of the house. Several doors and windows throughout the house were open, which fact throws doubt upon her opinion or inference as to the place from where the sound waves originated. See: 7 Wigmore, §§ 1929, 1977. On the other hand, Lora was in the living room talking on the telephone only five feet away from the open front door, and much closer to the garage in the east wing rear than her mother in the west wing front.

A.2d 554, and Roche v. Pennsylvania R. Co., 169 Pa.Super. 48, 56, 82 A.2d 332, 336.

### Negligence

■ Even if it is assumed that there was sufficient evidence of causation, the plaintiffs have failed to prove any negligence on the part of the defendant retailer. On July 18, 1959, Mr. McMeekin looked at several rotary-type mowers manufactured by various companies and on display in defendant's store. He relied solely on his own judgment in selecting the Eska mower and not upon any statement made by defendant's clerk. After he made the purchase, he took delivery of an Eska mower sealed in a carton. The mower was identical to the Eska on display which he had examined. Enclosed in the carton was a pamphlet containing instructions and warnings which Mr. McMeekin read.

Plaintiffs' theory of liability is based on § 388, Restatement of Torts. They contend that the mower was a dangerous instrument because it had a 24″ blade capable of developing 3,750 revolutions per minute, which would create a tip speed of 21,000 feet per minute which is more than 231 miles per hour; that defendant retailer knew of this power, and knew that small objects "could be expelled at a lethal speed" through the discharge chute "at least 150 feet with enough force to penetrate a human eye".[5] A metal apron surrounded the blade and extended below its level at all other points.

There was no proof, however, that anyone in defendant's employ had actual knowledge of these facts; no one in defendant's employ was shown to have tested an Eska mower to determine if it would expel objects and, if so, how far it could expel them with dangerous force. Knowledge is essential to liability. Mr. McMeekin had more knowledge about the actual performance of the mower than any one in defendant's employ was shown to have had. Unless they had prophetic powers, neither the buyer nor the seller reasonably could have foreseen harm to a person 50 feet distant from the mower.

No specific defect in the mower was alleged or proved which would cause it to be dangerous. There was no proof that the Eska mower was negligently designed or manufactured. There was no showing that the mower was substantially different in construction and operation from any other rotary mowers manufactured by other companies and offered for sale in defendant's store or commonly sold on the market. If plaintiffs still contend that the mower was improperly designed, it is only an assumption on their part.

In our opinion plaintiffs failed to bring their case within the purview of § 388, for it was not shown that defendant knew, or from facts known to it should have realized, that the mower was or was likely to be dangerous for the use for which it was supplied. The accident itself is the only fact in the case which would tend to prove that the mower was a dangerous instrument. Up to that time, Mr. McMeekin never saw or had reason to believe that any object other than grass was discharged through the grass chute. Thus, from plaintiffs' own evidence, it not only appears that the mower was safe for normal and careful use, but that the owner's use of it for several months without incident establishes that the defendant retailer could not have discovered the dangerous condition by the exercise of ordinary care. Plaintiffs

---

5. Plaintiffs' brief, pp. 2, 10–11. I now doubt that the opinions of plaintiffs' witness, Venable, were admissible on the distance the mower could propel small objects through the discharge chute. Venable did not make actual tests in this respect on any Eska mower; he simply theorized that the mower could propel small objects with great force at least 200 feet (Trans. 6/13/63, p. 95) and not more than three or four hundred feet (Trans. 6/13/63, p. 113). Actual tests made on an Eska mower showed the maximum distance an object the size of a marble could be thrown was 50 feet; and there was no evidence of the actual speed, force, trajectory, or "the vertical angle of exposure".

failed to meet their burden that the retailer knew or should have realized that a dangerous condition existed. Purkey v. Sears, Roebuck & Company, 220 F.2d 700 (5th Cir. 1955); cf. Thomas v. Ribble, 404 Pa. 296, 300, 172 A.2d 280, 282.

■ Where there is no proof of a dangerous instrumentality, and no proof of a defect or improper design making an otherwise harmless instrument dangerous, of which defendant retailer knew or should have known, it follows that the retailer has no duty to warn of product-connected dangers. Purkey v. Sears, Roebuck & Company, supra; American Law of Products Liability, vol. 1, § 2:30; 46 Am.Jur. § 805, p. 930.

On the facts in the instant case, § 402 of the Restatement of Torts, 1948 supplement, seems to be more applicable than § 388. Section 402 states:

"A vendor of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not subject to liability for harm caused by the dangerous character or condition of the chattel even though he could have discovered it by an inspection or test of the chattel before selling it."

The Pennsylvania law seems to be in accord. Kratz v. American Stores Co., 359 Pa. 335, 59 A.2d 138; cf. Burgess v. Montgomery Ward and Company, 264 F. 2d 495 (10th Cir. 1959) and cases collected in f.n. 16.

■ The plaintiffs' proofs establish that The Eska Corporation tested and manufactured Eska rotary mowers; that the mower purchased by McMeekin was packaged in a carton which contained printed instructions and warnings; that not even the designer was aware that this product would propel an object with such trajectory and velocity as to render it dangerous at a distance of 50 feet or more.[6] There was no duty on the defendant retailer to test or inspect each packaged rotary mower it offered for sale. Especially, the retailer had no duty to test for latent defects, the only kind the mower might have had, if it had any. 46 Am.Jur. § 805, p. 930.

The case of Ebbert v. Philadelphia Electric Co., 330 Pa. 257, 198 A. 323, cited by plaintiffs, is factually distinguishable from the instant case on three grounds: one, the chattel there was defective at the time of delivery; two, it was not sold in the original package of the manufacturer; three, the retailer inspected, tested, and demonstrated the chattel before selling it. It is these facts which make § 388 applicable to the Ebbert case. Similar facts being absent in the instant case, § 402, in our opinion, is the applicable section.

*Warranty*

As to plaintiffs' contention that the defendant retailer is liable for breach of warranty, there was no proof of any express warranty. 12A Purdon's Pa.Stat. Ann. § 2–313.

■ Mr. McMeekin did not purchase the Eska mower for a purpose other than the general purpose of cutting grass, and he did not rely on defendant's skill and judgment in selecting the mower; hence, there was no implied warranty of fitness. 12A Purdon's Pa.Stat.Ann. § 2–315.[7]

Finally, there was no proof of a breach of the implied warranty of merchantability or fitness for cutting grass. The plaintiffs utterly failed to meet their burden of establishing that the mower was not of merchantable quality *when delivered on July 18, 1959*. See: Knapp v. Willys-Ardmore, Inc., 174 Pa.Super. 90, 94–96, 100 A.2d 105, 108–109; Willman v. American Motor Sales Co., 44 Erie 51 (1961), charge of the Court at footnote 5.

---

**6.** See testimony of Frank William Banka, the designer, who was called as a witness by plaintiffs.

**7.** A sale of a specified chattel under its trade name, as here, tends to negative an implied warranty of fitness. Frantz Equipment Co. v. Leo Butler Co., 370 Pa. 459, 88 A.2d 702; Eimco Corporation v. Joseph Lombardi & Sons, 193 Pa.Super. 1, 162 A.2d 263.

On the contrary, the evidence established that the mower operated effectively and satisfactorily upon delivery and during the summer of 1959 and the early spring of 1960 and was usable and fit for the general purpose for which it was purchased. It complied with the commercial standards applicable to other rotary mowers on the market.

There was no proof that the mower was a dangerous instrument when delivered. There was no proof of any specific defect when the mower was delivered or at any subsequent time. There was no proof that it was negligently designed, or was designed in a fashion materially different from other rotary mowers on the market.

■ Whether a breach existed at the time the mower was delivered cannot be based upon mere conjecture or guess arising from a freak accident occurring at a time remote from the date of purchase. Knapp v. Willys-Ardmore, supra.

An appropriate order will be entered.