Frank G. GRECO, Plaintiff,

v.

**BUCCICONI ENGINEERING COMPA-NY, Inc., Defendant and Third-Party Plaintiff,**

v.

**WEAN ENGINEERING COMPANY, Inc., and Jones & Laughlin Steel Corporation, Third-Party Defendants.**

Frank G. GRECO, Plaintiff,

v.

**WEAN ENGINEERING CO., Inc., a corporation, Defendant and Third-Party Plaintiff,**

v.

**BUCCICONI ENGINEERING CO., Inc., and Jones & Laughlin Steel Corporation, Third-Party Defendants.**

Civ. A. Nos. 64–976, 65–317.

United States District Court
W. D. Pennsylvania.

Dec. 26, 1967.

As Amended Dec. 27, 1967.

See also D.C., 246 F.Supp. 261.

Donald E. Ziegler, Pittsburgh, for plaintiff.

George M. Weis, Weis & Weis, Pittsburgh, Pa., for Bucciconi Engineering Co.

Edmund S. Ruffin, III, Thorp, Reed & Armstrong, Pittsburgh, Pa., for Wean Engineering Co.

Robert H. Strub, Pittsburgh, Pa., for Jones & Laughlin Steel Corp.

## OPINION

JOHN L. MILLER, District Judge.

Defendant Wean Engineering Co., Inc., (hereinafter "Wean") was general contractor for a new coating line in the Surfa Glaze Department at the Pittsburgh mill of Jones & Laughlin Steel Corporation (hereinafter "J. & L."). As part of the line the contract required Wean to provide a "piler" manufactured by defendant Bucciconi Engineering Co., Inc. (hereinafter "Bucciconi") from specifications established by J. & L. The "piler", as it was delivered by Bucciconi to J. & L. in July, 1963, consisted of three sections together with lift motors. The components were installed by J. & L. employees.

Sheets of steel emerging from the drying oven are borne along by an overhead magnetic conveyor. When they are over the piling area, the magnets are deactivated and the sheets fall between parallel side guides and end stops.

When a certain number of sheets has fallen, the "lift" supporting them is lowered, and the sheets are moved to a conveyor system. To permit a continuous operation, the piler is equipped with "fingers" which can be extended to catch the falling sheets when the "lift" is elsewhere. Upon the "lift's" return, the fingers are retracted to permit the accumulated sheets to rest upon the "lift."

Sometime prior to March 8, 1964, it was observed that the "fingers" would retract erratically. Four days prior, J. & L. had installed "pins" in the "fingers" to check this. To permit retraction, it was necessary to remove the pins. On March 8, after the pins had been removed, plaintiff, an employee of J. & L., reached under the piler to straighten a sheet of paper. At this moment, without motivation by the operator, the fingers retracted and the sheets of steel fell with an amputating force on the fingers of plaintiff's right hand. For the resulting injuries, the above-captioned actions invoking the Court's diversity jurisdiction were instituted by plaintiff and consolidated for trial.

Plaintiff's allegations of negligence against Wean and Bucciconi were dismissed by the Court, which subsequently charged the jury on the basis of strict liability in tort.

The Court also submitted a special interrogatory to the jury. on the issue of J. & L.'s alleged negligence.

The jury returned verdicts for plaintiff and against Wean and Bucciconi. On the special interrogatory, the jury found that J. & L.'s conduct was negligent and a proximate cause of plaintiff's injury.

Plaintiff's case was submitted to the jury with a charge incorporating the substance of Section 402A of the Restatement of Torts, Second, which provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user * * * is subject to liability for physical harm thereby caused to the ultimate user * * *, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user * * * without substantial change in the condition in which it is sold.

"(2) The rule * * * applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user * * * has not bought the product from or entered into any contractual relation with the seller."

The language of Section 402A has been adopted as the law of Pennsylvania. Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966).

It is clear that defendants Wean and Bucciconi are "sellers" within the meaning of Section 402A. Thus it is necessary to inquire only whether the evidence establishes:

(1) That the " * * * product [was] in a defective condition unreasonably dangerous to the user * * *."; and

(2) That the product was " * * * expected to and [did] reach the user without substantial change in the condition in which it [was] sold."

Plaintiff's competent evidence was limited to proof that he was injured when the "fingers" of the pilers opened under circumstances in which they should have remained closed. He did not attempt to trace this malfunction to any particular component part of the machine. Nor did he seek by testimony, expert or otherwise, to offer a theory for the malfunction. Thus the issue may be phrased: Does the mere occurrence of a malfunction by machinery evidence a "defective condition" within the meaning of Section 402A of the Restatement?

█ Since the landmark case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696 (1916), where there was evidence that the wheel which collapsed was constructed of defective wood, successful plaintiffs asserting liability on grounds of negligence have regularly adduced evidence of a specific defect in the manufacturer's product. Cf. Kuzma v. United States Rubber Co., 323 F.2d 657 (3 Cir. 1963); Trowbridge v. Abrasive Co. of Philadelphia, 190 F.2d 825 (3 Cir. 1951). Absence of such evidence fails to establish a cause of action in negligence. Vandercook and Son, Inc. v. Thorpe, 322 F.2d 638 (5 Cir. 1963), reh. 344 F.2d 930 (5 Cir. 1965).

If the evidence of a "defect" required to establish a cause of action under Section 402A of the Restatement, supra, is identical to that required in a negligence action, plaintiff's evidence was insufficient. There remains to be considered whether this correlation is correct. In turn, this analysis requires a review of the history of Section 402A.

The antecedents of Section 402A may be traced to Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960), where the Court upheld a warranty of fitness and waived the requirement of privity between the parties in holding the manufacturer and seller liable for injuries sustained from a defective automobile.

The rule in *Henningsen* was recognized in Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1963), where the trial court had entered judgment for plaintiff, who had been injured using a machine manufactured by defendant. The Supreme Court affirmed. For a unanimous bench, Mr. Justice (later Chief Justice) Traynor, after reviewing cases based on breach of warranty, asserted:

"Although in these cases strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that the liability is not assumed by agreement but imposed by law [citations omitted], and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products [citations omitted] make clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort." 59 Cal.2d 63, 27 Cal.Rptr. 701, 377 P.2d 901. Accord: Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 (1965); Cf. Ford Motor Co. v. Lonon, 217 Tenn. 400, 398 S.W.2d 240 (1966).

In Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305, 16 A.L.R. 3d 670 (1965), judgment was entered for plaintiff on the basis of the rule in *Henningsen,* supra. The Superior Court reversed on other grounds. The Supreme Court confirmed the liability aspect of the trial court's judgment, but remanded for a new trial on the issue of damages. For a unanimous bench, Mr. Justice Francis confirmed the applicability of *Henningsen,* but noted: "It seems important to observe, however, that the manufacturer's liability may be cast in simpler form", namely, strict liability in tort. 207 A.2d 311.

Pennsylvania has not accepted *Henningsen's* impairment of the requirement of privity in warranty actions. Miller v. Preitz, 422 Pa. 383, 221 A.2d 320 (1966). However, in the *Miller* case, the Court, per Cohen, J., observed that recognizing strict liability in tort and abandoning the privity requirement in warranty actions would produce "a similar result." 422 Pa. 393, 221 A.2d 320. The same day, the Court rendered Webb v. Zern, supra.

■ Adopting the evidentiary requirements of warranty rather than negligence is supported by the nature of strict liability itself. The law of negligence is primarily concerned with the actor's conduct in terms of the applicable duty of care. Thus it is vital to trace the injury to some specific error in construction or design of the machinery to determine whether " * * * the accident * * * was one that could not have been avoided by the exercise of reasonable care * * *." Loch v. Confair, 372 Pa. 212, 218, 93 A.2d 451, 454 (1953).

In contradistinction to the law of negligence, the law of warranty assigns liability on the basis of the product's lack of fitness. When machinery "malfunctions", it obviously lacks fitness regardless of the cause of the malfunction. Under the theory of warranty, the "sin" is the lack of fitness as evidenced by the malfunction itself rather than some specific dereliction by the manufacturer in constructing or designing the machinery.

■ As the substance of strict liability in tort is akin to that of the law of warranty, the evidentiary requirements to establish breach of warranty rather than those to prove negligence should prevail in an action in strict liability in tort.

In Pennsylvania, plaintiffs in actions for breach of warranty have regularly sought to establish the cause of the malfunction. Jarnot v. Ford Motor Co., 191 Pa.Super. 422, 156 A.2d 568 (1959); Duckworth v. Ford Motor Co., 211 F. Supp. 888 (E.D.Pa.1962), modified on other grounds, 320 F.2d 130, 97 A.L.R.2d 806 (3 Cir. 1963); cf. Knapp v. Willys-Ardmore, Inc., 174 Pa.Super. 90, 100 A. 2d 105 (1953). Yet, nothing in the opinions indicates that such evidence was the *sine qua non* for a verdict for plaintiffs.

In other jurisdictions, judgments for plaintiffs alleging breach of warranty have been sustained on evidence of malfunction alone. In the *Henningsen* case, supra, Mr. Justice Francis asserted:

"The facts * * * show that on the day of the accident, ten days after delivery, Mrs. Henningsen was driving in a normal fashion, on a smooth highway, when unexpectedly the steering wheel and the front wheels of the car went into the bizzare action described. Can it reasonably be said that the circumstances do not warrant an inference of unsuitability for ordinary use against the manufacturer and the dealer?"

The plaintiff's case in *Henningsen* was supported by expert testimony that "something down there had to drop off or break loose" to cause the car to act in the manner it did. This evidence was reviewed by the Court, but only in response to defendant's challenge to the witness's competency. The evidence was apparently not crucial to the Court's finding of breach.

In Cordle v. Renault, Inc., 361 F.2d 332 (6 Cir. 1966), defendant had sold to plaintiff a car which vibrated at certain speeds. Plaintiff was injured when in the course of vibrating, the car went out of control. The case was tried on theories of an express warranty that the vehicle was "free under normal use and service from defects in material or workmanship" and an implied warranty of fitness for the purpose purchased. Affirming judgment for plaintiff, the Court in a per curiam decision which cited no other evidence held " * * * the evidence was sufficient to justify submission to the jury of the issues of breach of warranty, waiver, proximate

cause and assumption of the risk." 361 F.2d 333.

Vandercook and Son, Inc. v. Thorpe, supra, presented a factual situation highly analogous to that of the instant case. There plaintiff was employed in a printing shop to operate a press manufactured by defendant. As the Court reviewed the evidence:

"The machine was so designed that it could be used in three ways, i. e., manual, semi-automatic and automatic accomplished by the proper setting of the controls. It was generally operated by the engravers on a semi-automatic setting, and it was so set at the time of plaintiff's injury. The machine when set for semi-automatic operation was so designed that when the operator would place the plate to be tested on the bed, switch on the electric current (the machine was electrically powered) and press a foot pedal the roller would move from the left end of the press to the right end and stop, remaining stationary until the foot pedal was again pressed and the roller would then return to its former position and stop.

" * * * plaintiff while in the course of his work, placed on the bed of the machine an etched plate to be tested, ascertained that the machine was set for semi-automatic operation, properly inked the plate and attached the paper, pressed the pedal causing the cylinder to move over the plate toward the right end of the press, and when plaintiff reached to remove the paper the cylinder, instead of stopping as it was supposed to do and had theretofore done, reversed course pinioning and severely damaging the plaintiff's hand." 322 F.2d 640.

The Court noted also that the machine for some time thereafter malfunctioned at "unpredictable times," that examination by defendant's service representative failed to disclose the cause of the malfunction, and that the malfunctions had ceased prior to trial.

The District Court denied defendant's motion for a directed verdict. Reversing, the Court, per Whitehurst, D. J., asserted:

"We think the burden was on the plaintiff to show that there was something basically wrong with the design or construction of the instrumentality used to control and insure the stopping of the roller of the press at the right-hand end of the bed when set for semi-automatic operation and that such fault caused the malfunction. However, plaintiff's proof did not identify the fault." 322 F.2d 644.

Concurring specially, Circuit Judge Cameron asserted:

"To make out a case here under any theory of liability asserted—tort, warranty or whatever—the plaintiff must show that there was something *wrong* with the press. He must show that it was defective.

"Any machine made, no matter how 'safe' it be, can and probably will sooner or later malfunction and cause injury if it is improperly used, maintained or cared for. Proof of malfunction and of injury does not, in and of itself, make out a case. Nothing more was shown here." 322 F.2d 646.

Dissenting, Circuit Judge John R. Brown contended:

"The press failed to function many times by rolling back when it ought not to. Obviously the jury could find that a press should not do that. The jury could likewise conclude that this was not the result of improper maintenance or repair. A press which unaccountably rolls back without warning is not fit for the job for which it is intended. It was this characteristic which caused Plaintiff's injuries." 322 F.2d 646, 647.

Judge Brown's analysis ultimately governed the case; for, on rehearing, the Court reversed and remanded, stating in a per curiam decision that a *prima facie* case was established by facts that " * * * when the injury occurred, the

machine was being used generally in the manner intended." 344 F.2d 931.

The manufacturer in *Santor,* supra, admitted his product was defective, thus, as the Court stated, it was " * * * not necessary in the context of this case to attempt to define the outer limits of the term 'defect' [citation omitted]." 207 A. 2d 313. However, elsewhere the Court equated "defective" with "not reasonably fit for the ordinary purposes for which such articles are sold and used and the defect arose out of the design or manufacture * * *." 207 A.2d 313.

In Cintrone v. Hertz Truck Leasing etc., 45 N.J. 434, 212 A.2d 769 (1965), the Court, again speaking through Mr. Justice Francis, asserted:

"As [plaintiff] described it, although [the driver] was pumping the brakes, the truck just kept on going ahead. These circumstances justify the inference that the brakes were defective." 212 A.2d 778.

It has also been asserted:

"A breach of warranty may be proved if it is shown, by expert testimony or reasonable inferences from the circumstances, that a product is defective or injurious or failed in normal use and caused the injury complained of.

"Is a product which causes damage under circumstances constituting a breach of warranty 'defective' for purposes of the rule of strict liability in torts? Would the same suffice? While not clear-cut, affirmative answers seem to be implicit in the cases." 2 Fumer and Friedman, Product Liability, § 16A [4] [e] p. 3–203.

Defendants contend that there is no evidence of a structural defect in the piler. They contend further that it is as reasonable to attribute the malfunction of the piler to a defect in the control panel manufactured by Westinghouse Electric Company or to deficiencies in J. & L.'s compressed air system. They characterize the jury's findings as "speculative."

■■ A finding that the malfunction was prompted by a defect in the control panel or air system would be equally "speculative"; no evidence in support of these theories having been adduced. A malfunction evidences a defect. Santor v. A & M Karagheusian, Inc., supra. The plaintiff is not obliged to negate alternative grounds of causation. Trowbridge v. Abrasive Co. of Philadelphia, supra.

■ The evidence was sufficient for the jury to find that defendants' product was in a "defective condition" within the meaning of Section 402A of the Restatement.

Defendants seek to negate strict liability in tort on the grounds that "substantial changes" were effected after the piler was delivered to J. & L. The "changes" asserted fall into two categories: 1) the piler was delivered in three pieces and assembled by J. & L., and 2) after early instances of malfunctioning, J. & L. inserted "pins" into the "fingers."

The first alleged "change" was not a change, but merely the incorporation of component parts. The Restatement suggests that where there is no change in the component parts themselves, strict liability attaches. Restatement, Torts, Second, comment q.

The second alleged "change" did not alter the nature of the machine. There is not a scintilla of evidence that the addition of "pins" produced the malfunction; indeed, the "pins" were inserted to check prior malfunctions. The Restatement suggests that where the change does not affect the defective portion of the product, strict liability of the manufacturer continues. Restatement, Torts, Second, comment p.

■ Defendants also argue that the evidence is insufficient to establish that the defect existed at the time of delivery. As stated in Ebbert v. Philadelphia Elec. Co., 126 Pa.Super. 351, 356, 191 A. 384 (1937), aff'd. 330 Pa. 257, 198 A. 323 (1938):

"Proof of * * * [the existence of a defect at the time the machine was delivered] may not be based upon mere

conjecture or guess work [citation omitted], yet it was not necessary to exclude every other possible cause which the ingenuity of counsel might suggest: [citations omitted]. * * * The test to be applied was whether the circumstances shown were such as would satisfy a reasonable and well balanced mind that the defective condition * * * existed when the machine was delivered * * *. [citation omitted]." Quoted with approval in Knapp v. Willys-Ardmore, Inc., supra, 174 Pa.Super. 95, 96, 100 A.2d 108.

■ The evidence was sufficient to permit the jury to find that the condition giving rise to the malfunction existed at the time of the delivery of the piler.

■ Defendants assert that plaintiff was guilty of assumption of the risk in voluntarily and unreasonably proceeding to encounter a known danger. Such allegation if proved constituted a complete defense. Ferraro v. Ford Motor Co., 423 Pa. 324, 223 A.2d 746 (1966); Cf. Restatement, Torts, Second, Section 402A, comment n. The issue, however, was for the jury's determination. Walsh v. Miehle-Goss-Dexter, Inc., 378 F.2d 409 (3 Cir. 1967).

■ Defendants argue that the jury's assessment of liability against them is inconsistent with its answer to the special interrogatory. However, it is axiomatic that an injury may be caused by the misconduct of more than one party; and in such a case the plaintiff may recover from any of them. Kendrick v. Piper Aircraft Corp., 265 F.2d 482 (3 Cir. 1959); Chadwick v. Popadick, 390 Pa. 511, 136 A.2d 87 (1957). Defendants' liability would be exculpated only by evidence that J. & L.'s negligence constituted a superseding cause of plaintiff's injury:

"In Pennsylvania, an intervening negligent act by a third person does not, in all cases, constitute a superseding cause relieving an antecedent wrongdoer from liability for negligently creating a dangerous condition. The act is superseding only if it was so extraordinary as not to have been reasonably foreseeable. [Citations omitted]." Leposki v. Railway Express Agency, Inc., 297 F.2d 849, 850 (3 Cir. 1962).

The evidence alleged to support the charge of negligence against J. & L. was:

1) Its failure to install guards around the piler, and

2) Its permission for employees to work beneath the piler.

In seeking to negate the assertion that the piler was negligently designed, defendants contended that the efficient use of the machine required the stationing of employees where plaintiff was located and forbade the installation of guards. There is no substantial factual issue that defendants did not foresee the conduct of J. & L. which they allege to have been negligent. Accordingly, there were no grounds to submit the issue to the jury.

Defendant Wean, third-party plaintiff at Civil Action No. 65–317, sued defendant Bucciconi, third-party defendant therein, seeking damages for any judgments entered against it by way of breach of warranty.

■ The proof established that Bucciconi sold the piler to Wean. Section 2–314 of the Uniform Commercial Code, 12A P.S. § 2–314, implies a warranty of merchantability in this transaction. The jury's verdict necessarily concluded that the product was in a defective condition at the time it was sold by Bucciconi. Thus all of the elements necessary to establish a warranty and a breach thereof have been established. Hessler v. Hillwood Mfg. Co., 302 F.2d 61 (6 Cir. 1962); Davis v. Radford, 233 N.C. 283, 63 S.E.2d 822, 24 A.L.R.2d 906 (1951). Cf. Tromza v. Tecumseh Products Co., 378 F.2d 601 (3 Cir. 1967); 2 Fumer & Friedman, supra, § 16A [4] [b], [i]; Wade, Strict Tort Liability, 19 S.W.L.J. 5, 24 (1965). Accordingly, Wean is entitled to a judgment over against Bucciconi.

For the foregoing reasons, the motions for judgment non obstante vere-

986

dicto presented by Bucciconi and Wean shall be denied.

Defendants have also moved for a new trial. In addition to the points discussed, supra, these motions are substantially based on alleged improprieties in the closing address of plaintiff's counsel and exceptions to the Court's charge. We have reviewed the closing address and detect no impropriety of such magnitude as would warrant a new trial. Moreover, we conclude that our own subsequent remarks to the jury corrected any misapprehension in the jury's mind. We have also reviewed the charge in the light of the points asserted by defendants. We find their contentions to be without merit, with one exception of the issue of damages.

■ Plaintiff incurred medical expenses of approximately $4,500 and lost wages of $11,691.12. He continues to be employed in the same job classification he occupied before his injury. Because of general wage increases and the introduction of incentive pay, his hourly rate has risen from $2.31 to $4.50.

Although the jury was properly instructed regarding the measure of damages, our conscience is offended by the verdict for $99,000. We believe that the maximum amount consistent with the injury and damages revealed in the record would be $50,000. In such circumstances it would be proper to grant a new trial. However, plaintiff shall be afforded an opportunity to remit the excessive portion of the verdict. Cf. Boldurian v. A/B Svenska Amerika Linien, 246 F. Supp. 413 (E.D.Pa.1965).

An appropriate order will be entered.

### AMENDED ORDER OF COURT

The motions filed by Wean Engineering Co., Inc. and Bucciconi Engineering Co., Inc. for judgment notwithstanding the verdict are denied. The motions filed by Bucciconi Engineering Co., Inc. and Wean Engineering Co., Inc. for a new trial on the issue of liability are denied. The motions filed by Bucciconi Engineering Co., Inc. and Wean Engi-

neering Co., Inc. for a new trial on the issue of damages be and the same are granted unless the plaintiff, Frank G. Greco, within fifteen (15) days after the service of this Order shall file a remittitur with the Clerk of this Court remitting the sum of $49,000.00. Upon filing of said remittitur, counsel for the defendant Wean shall submit a form of order for judgment over against Bucciconi.