Merit Motors, Inc., Appellant, *v.* Bartholomew.

Argued September 29, 1955. Before RHODES, P. J.; HIRT, ROSS, WRIGHT, WOODSIDE, and ERVIN, JJ. (GUNTHER, J., absent).

*Samuel J. Marks,* for appellant.

*Harry Goldbacher,* for individual defendant.

*Burton Caine,* with him *Robert B. Wolf* and *Wolf, Block, Schorr & Solis-Cohen,* for corporate defendant, appellee.

OPINION BY ERVIN, J., November 16, 1955:

This is an action in assumpsit wherein plaintiff, a corporation engaged in buying and selling used cars, sued the individual defendant, William Bartholomew, for the sum of $973.00, the balance claimed to be due on the sale of a 1949 Mercury sedan. The corporate defendant, Allstate Insurance Company, a company engaged in the business of writing automobile insurance, was joined in the suit on the theory that it agreed to finance the sale. The case was tried by the lower court without a jury and a finding entered in favor of the plaintiff and against Bartholomew in the sum of $828.90, being the balance of consideration ($973.00 less counterclaim of $232.91 for repairs), $740.09, plus interest of $88.81. The trial judge found in favor of Allstate. Plaintiff's motions for judgment non obstante veredicto and for a new trial as to Allstate were refused. As to Bartholomew, a new trial was granted to accord him the opportunity to prove the proper

measure of damages for the breach of warranty of the automobile. The plaintiff appealed to this Court.

The lower court found as facts "that the 1949 Mercury sedan was not sold by the plaintiff in an 'as is' condition, but rather it represented and warranted the automobile would be taken to a repair shop and repaired and put in a first class and good mechanical condition; that defendant relied on the promises and was induced to believe this automobile, having been taken to an automobile service shop for servicing or repairing, was in a first class and good mechanical condition, when delivered to him; and that shortly after delivery he learned the automobile was not in a first class and good mechanical condition but rather it was defective and not as warranted; that defendant promptly notified plaintiff and endeavored to rescind the transaction, all of which plaintiff ignored; that, after said offer of rescission was ignored by the plaintiff, the individual defendant ordered payment stopped on the $973 check; that thereafter, however, the individual defendant did make use of the said automobile, having it inspected on several occasions, and operating it nearly one thousand miles; that the defendant had certain repairs costing $232.91 made to the automobile to put the car in an operating condition; that more repairs were necessary and should have been made to the automobile to remedy the defects existing on delivery and to put it in a condition to comply with the plaintiff's warranties; that the individual defendant has possession and title of the 1949 Mercury sedan but the plaintiff no longer has possession of the 1940 Mercury sedan (the automobile traded in by the individual defendant) it having disposed of it by sale before the date of this trial; that the plaintiff and the individual defendant valued the said 1940 Mercury sedan of the defendant at $500; that the plaintiff sought and in-

duced the corporate defendant to aid it in financing the transaction with the individual defendant; that the corporate defendant did not finance the individual or the transaction between him and the plaintiff; that the Second National Bank did finance the transaction and as part of its agreement of financing took a lien on the 1949 automobile which the plaintiff filed with the Secretary of Revenue (Motor Vehicles Division) on the said financed automobile; that the corporate defendant is not a maker or endorser of the $973 check; that at the request of the plaintiff it merely acted as agent for the Second National Bank to aid plaintiff in financing the transaction; that the said corporate defendant was induced to act in the transaction, and to authorize the check in controversy, in reliance on known false representations made to it by the plaintiff."

The finding of the lower court has the same effect as a verdict of a jury. The defendant is entitled to have the evidence viewed in the light most favorable to it, receiving the benefit of all favorable inferences and with all conflicts in testimony resolved in its favor. *Polaski v. Levin,* 176 Pa. Superior Ct. 370, 107 A. 2d 876. We have reviewed the original record and there is ample evidence to support the above findings of the lower court.

The appellant's argument in this Court is (1) that Allstate was a principal and therefore directly liable to plaintiff, and (2) that there is no evidence of fraud to support a finding of breach of warranty by the plaintiff. In connection with the first point, appellant argues that Allstate failed to meet its burden of proof that it was acting as an agent. With this we do not agree. Plaintiff submitted credit data on Bartholomew through Allstate to the bank and it was plaintiff's president who notified Bartholomew that the bank was

willing to make the loan. Plaintiff agreed to file an encumbrance on the car in favor of the bank. In *Marano v. Granata*, 147 Pa. Superior Ct. 558, 561, 24 A. 2d 148, we said: "It is well established that a person acting as an agent for a disclosed principal is not, in the absence of special circumstances, a party to the contract. 'The general rule of law is, that where one deals with an agent who acts within the scope of his authority and reveals his principal, the principal alone is liable for a breach of the contract. In the absence of any evidence of fraud, lack of authority to bind the principal or other exceptional matter, the general rule must be enforced.' Kessler v. Africa, 66 Pa. Superior Ct. 203, 205. See, also, Levy v. Conly et al., 340 Pa. 332, 336, 17 A. 2d 382; Restatement, Agency, §320."

In connection with the first point appellant also argues that the evidence in this case showing the intention of the parties should be disregarded because of §63 of the Negotiable Instruments Law, Act of May 16, 1901, P. L. 194, 56 PS §154, which provides: "A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor, is deemed to be an endorser unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Section 64 of the Negotiable Instruments Law, supra, 56 PS §155, provides: "Where a person, not otherwise a party to an instrument, places thereon his signature *in blank*, before delivery, he is liable as indorser in accordance with the following rules:

"1. If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties." (Emphasis added)

Suit was not instituted upon the check but, assuming that it had been, the fact is that the signature was not placed on the instrument *in blank*. On the contrary, it was written "Berton Brooks" and then under-

neath appeared the words "A. S. Authorized Agent." What is the meaning of these words? What does "A. S.". mean? Is Brooks the authorized agent of "A. S." or is "A. S." by Brooks the authorized agent of Second National Bank? There is certainly an ambiguity here which requires extrinsic evidence to show what the true meaning is.

In *Dormont Savings & Trust Co. v. Kommer and Philips*, 338 Pa. 548, 553, 13 A. 2d 525, Mr. Justice STERN, now Chief Justice, said: "Where there is an obvious ambiguity as to whether a name appears on the note in an official or an individual capacity, and the litigation is between the original parties to the instrument, parol evidence is admissible to show the facts and circumstances attending its execution: . . . ."

Evidence was permitted to show that "A. S." meant Allstate Insurance Company. As between the original parties evidence was admissible to show that Allstate Insurance Company was acting, through its employe Brooks, as agent for Second National Bank, the bank upon which the check was drawn, as shown on the face of the check. The evidence also showed that Allstate received no fee for financing this transaction. Its only financial interest in the matter was to receive an insurance premium for writing insurance upon the car.

There was ample evidence to support the lower court's finding that Allstate was induced to act by plaintiff's false and fraudulent misrepresentations as to the condition of the automobile. Having induced the transfer of the check by fraud, plaintiff could not be a holder in due course and was subject to the same defenses as it would have been had there been no check in the transaction. The Negotiable Instruments Law, Act of May 16, 1901, P. L. 194, §52, 56 PS §132; *Western Savings Bank v. Sauers*, 243 Pa. 561, 90 A. 347.

582

As between the original parties to a negotiable instrument and others not holding in due course, failure of consideration is likewise a defense. *Early v. Huntley*, 315 Pa. 382, 172 A. 683; *Sisemore & Kierbow Co. v. Nicholas*, 149 Pa. Superior Ct. 376, 27 A. 2d 473.

The judgment of the lower court in favor of the corporate defendant, Allstate Insurance Company, is affirmed at the cost of the plaintiff.

The order of the lower court granting a new trial as to the individual defendant, William Bartholomew, is affirmed.