423 A.2d 1262

Walter YATES

v.

CLIFFORD MOTORS, INC., Appellant,

v.

CHRYSLER CORPORATION.

Superior Court of Pennsylvania.

Argued Dec. 3, 1979.

Filed Dec. 29, 1980.

Robert J. Fields, Waymart, for appellant.

Stephen G. Bresset, Honesdale, for Yates, appellee.

Paul A. Barrett, Scranton, for Chrysler, appellee.

Before PRICE, WATKINS and HOFFMAN, JJ.

PRICE, Judge: ·

The instant appeal is from the order and judgment in the court of common pleas awarding appellee, Walter Yates, $2,780.12 with interest from January 17, 1977, in his suit against appellant, Clifford Motors, Incorporated, for damages resulting from rescission of a contract for the purchase of a Dodge pick-up truck. For the reasons that follow, we affirm the trial court's verdict as to the liability of appellant but reverse and remand on the issue of damages.

■ When a trial judge, sitting without a jury, makes findings of fact which are subsequently affirmed by the court en banc, such factual determinations are binding upon us provided that they are supported by the evidence. *Simon v. Hospital Service Association of Pittsburgh*, 192 Pa.Super. 68, 159 A.2d 52 (1960); *Merit Motors, Inc. v. Bartholomew*, 179 Pa.Super. 576, 118 A.2d 277 (1955). Moreover, "[t]he party favored by the finding[s] is entitled to have the evidence viewed in the light most favorable to him, and to receive the benefit of all favorable inferences, and to have all conflicts in the testimony resolved in his favor" *Simon v. Hospital Service Association of Pittsburgh*, 192 Pa.Super. at 71–72, 159 A.2d at 54 (citation omitted). Evaluating the evidence by that standard, the following background of this dispute is established.

On January 13, 1977, appellee Yates test drove a Dodge club-cab pick-up truck and entered into a discussion with one Joe Farino, appellant's salesman, regarding the possible purchase of said vehicle. During the test drive, Yates detected a vibration in the front end of the truck and brought it to Farino's attention. Farino suggested that the problem possibly was caused by the icy road conditions and that if it was mechanically induced it could be alleviated by a minor adjustment. Following the test drive, Farino and Yates discussed the purchase price, the "extras" to be included within said price and the gas mileage which Yates could expect the truck to get. Yates ultimately agreed to purchase the truck for $2,000 plus the trade-in value of his 1976 Dodge Aspen.

On January 14, 1977, appellee returned to Clifford Motors to examine the truck with a friend. On this occasion, Yates detected a defect in the driver's side door which prevented the door from closing completely. Farino assured Yates that the door would be repaired and that there would be no other difficulties since the vehicle was new and under warranty. The truck thus remained with appellant. Yates returned, either on Monday, January 16 or Tuesday, January 17, 1977, to take delivery of the truck. When the truck was

brought from the service area, however, it was apparent that the defective door had not been repaired. In addition, appellee observed scrapes and gouges in the finish on the passenger side door and rear quarter panel. Yates was again assured that the defects would be rectified but since the shop was closed for the day, Yates was instructed to take delivery of the truck, to schedule an appointment to have the truck repaired at a later date, and to make a list of any other defects which became apparent during the interim.

Appellee's subsequent use of the truck revealed numerous problems. Even unloaded, the truck would not travel a hill unless it was first driven several miles to warm the engine. Rather than the fifteen to seventeen miles per gallon of gasoline Yates was told to expect, the truck obtained only about five miles to the gallon. Although the vehicle was to have been equipped with Goodyear tires, tinted glass on all windows and a factory radio, as delivered, the tires were manufactured by General, only the windshield was tinted, and the radio installed by the dealer failed to fit properly in the dashboard. Besides these shortcomings, the heater failed to generate heat and thus had to be replaced. On at least four occasions, the truck was returned to appellant's repair shop to have the problems corrected. Although repair work was performed, the defect which prevented the door from being completely closed, the front end noise and vibration complained of during the initial test drive, and the marred finish on the door and quarter panel were never corrected.

Thereafter, appellee attempted unsuccessfully to contact appellant's owner on numerous occasions concerning the difficulties he was experiencing. Approximately one week before his first monthly payment was due, Yates contacted the Jermyn Bank, which bank financed appellee's purchase of the truck. Yates explained the difficulties with the truck as well as his inability to contact appellant's owner and informed the bank that he would make no payments on the truck until the appropriate repairs were made. The person

to whom Yates spoke reportedly informed him that the bank would contact appellant and attempt to resolve the difficulties. Yates thus continued in his refusal to make payments and, although the Jermyn Bank apparently failed to fashion a solution, Yates received neither notification of the bank's failure nor a statement that his account was past due.

Nearly four months after Yates took delivery of the truck and some three months following his communication with the Jermyn Bank, the matter remained unresolved. On or about May 5, 1977, therefore, appellee filed a complaint in assumpsit against appellant, Clifford Motors. Two months later, during the first week in July, appellant repossessed the truck based upon appellee's failure to make the required payments. Thereafter, on or about February 3, 1978, Clifford Motors served a Complaint Against Additional Defendant on Chrysler Corporation, the manufacturer of the truck involved herein.

Finding no evidence that Chrysler Corporation committed a breach of warranty, the trial court granted appellee Chrysler's motion to dismiss the action as against Chrysler on January 11, 1979. On February 6, 1979, following a non-jury trial, a verdict was rendered in appellee Yates' favor and against Clifford Motors. The trial court reasoned, pursuant to section 2–606 of the Pennsylvania Uniform Commercial Code [hereinafter referred to as "U.C.C."],[1] that Yates never accepted the contract for purchase of the truck or, alternatively, even accepting, *arguendo*, that Yates had

---

1. U.C.C. section 2–606 provides that,
 (1) Acceptance of goods occurs when the buyer
 (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or
 (b) fails to make an effective rejection (subsection (1) of Section 2–602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
 (c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.
 (2) Acceptance of a part of any commercial unit is acceptance of that entire unit.
 Act of April 6, 1953, P.L. 3, § 2–606, *amended & reenacted*, Act of October 2, 1959, P.L. 1023, § 2, 12A P.S. § 2–606.

accepted the truck, he would nonetheless have been entitled to revoke his acceptance pursuant to U.C.C. section 2–608.[2] Slip. op. at 5–7. Consequently, the court concluded that Yates was "entitled to recover the value of the vehicle he traded in on the truck together with any cash outlay." *Id.* at 2. Appellant, Clifford Motors, thereafter filed this appeal.

Appellant argues that appellee accepted the truck since he failed to seasonably notify Clifford Motors of his intent to reject as required by U.C.C. section 2–602.[3] Further, appel-

2. The procedure to be followed in revoking one's acceptance is outlined in section 2–608 of the U.C.C.

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

3. Section 2–602 provides:

(1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

(2) Subject to the provisions of the two following sections on rejected goods (Sections 2–603 and 2–604),

(a) after rejection any exercise of ownerships by the buyer with respect to any commercial unit is wrongful as against the seller; and

(b) if the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provision of this Article (subsection (3) of Section 2–711), he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but

(c) the buyer has no further obligations with regard to goods rightfully rejected.

(3) The seller's rights with respect to goods wrongfully rejected are governed by the provisions of this Article on seller's remedies in general (Section 2–703).

lant contends that the facts adduced at trial belie any assertion that appellee's acceptance was revoked pursuant to U.C.C. section 2–608. Finally, appellant asserts that any defects in the truck were the responsibility of Chrysler Corporation and, therefore, that Chrysler was improperly dismissed as an additional defendant. While we cannot agree with these contentions, we must address a related issue before considering the merits of appellant's appeal.

Chrysler Corporation filed a Motion to Dismiss and/or to Quash this appeal to the extent that Clifford Motors challenged the propriety of the trial court's dismissal of the action as against Chrysler. We reserved ruling on Chrysler's motion until oral argument on the merits of this case. This having been done, we will now rule on the motion.

■ The premise of Chrysler's motion is that appellant should have appealed within thirty days of the lower court's order dismissing Chrysler, *see* Pa.R.A.P. 902–03, rather than awaiting the lower court's ruling on exceptions filed in response to said order. This argument is without merit.[4] "Final judgment is not entered until after the hearing on the exceptions before the court *en banc*. It is only from the decision on the disposition of the exceptions that an appeal may be taken." *First Valley Bank v. Steinmann*, 253 Pa.Su-

4. At the conclusion of the plaintiff's case, Chrysler moved that it be dismissed since there had been neither *allegata* nor *probata* of any liability on the part of Chrysler Corporation. The motion was, at that point, ruled out of order. On January 11, 1979, following the conclusion of trial and the court's reconsideration of the motion, the trial court entered an order dismissing the action against Chrysler. Clifford Motors filed exceptions to that order on January 22, 1979. A verdict was rendered against Clifford Motors on February 6, exceptions were filed on February 15, judgment was entered against Clifford Motors on February 26 and, on February 27, 1979, arguments were heard on all of the exceptions filed to that date. On March 21, 1979, the trial court overruled and dismissed the exceptions and affirmed the findings of fact, conclusions of law, and the verdict rendered against Clifford Motors. Prior to March 21, 1979, therefore, "with exceptions to the order in question undisposed of . . . the order [was] not final and not appealable. *Sessa v. Melnick*, 420 Pa. 257, 216 A.2d 56 (1966)." *Judge v. Pocius*, 21 Pa.Cmwlth. 580, 583, 347 A.2d 752, 753 (1975).

per. 8, 12, 384 A.2d 949, 951 (1978) (citations omitted). *See, e. g., Judge v. Pocius,* 21 Pa.Cmwlth. 580, 583, 347 A.2d 752, 753 (1975). An appeal at any time prior to the order of March 21, 1979 overruling and dismissing appellant's exceptions would thus have been premature. Accordingly, the Motion to Dismiss and/or to Quash is denied.

 We now address appellant's first contention that appellee Yates accepted the vehicle pursuant to U.C.C. section 2–606. That section posits a three-pronged test for determining whether a buyer has accepted a particular item of goods. First, acceptance occurs after the buyer has had a reasonable opportunity to inspect the goods and has advised the seller either that the goods are conforming or that he will take or retain the goods despite an existing nonconformity. Second, a buyer will be deemed to have accepted the goods if, after a reasonable opportunity to inspect, he fails to effectively reject. Last, a buyer who acts in a manner inconsistent with the seller's ownership rights may likewise be charged with acceptance of the goods in question. *See* U.C.C. § 2–606(1)(a)—(c). In view of the facts adduced at trial, it would be untenable to maintain that appellee accepted the truck based on the first prong of the test contained in U.C.C. section 2–606.[5] Accordingly, our analysis must focus on the latter two prongs of the Code's test to determine whether appellee properly and timely rejected and whether his conduct with respect to the truck was consistent both

---

**5.** Commencing with appellee's road test of the truck and ending with his ultimatum to the Jermyn Bank, appellee made it unequivocally clear that the truck was non-conforming. In addition to his testimony to that effect at trial, the truck's nonconformity is circumstantially confirmed by the fact that appellee scheduled and kept numerous appointments to have the truck repaired at appellant's expense. The record itself reveals that, absent assurances by appellant's sales personnel that the nonconforming vehicle would be repaired, appellee would never have taken delivery of the truck in the first instance. *See* N.T. 11. It is ludicrous to argue, therefore, either that appellant was advised by Yates that the truck was acceptable or that he would accept it in spite of the numerous uncorrected defects.

with his rejection and with appellant's ownership of the truck.[6]

Appellant argues that appellee failed to effectively reject the truck because: (1) the rejection, if any, occurred after an unreasonable passage of time; (2) appellee did not notify Clifford Motors that he was rejecting; (3) there was no offer to return the truck or tender of the same to Clifford Motors; (4) appellee's operation of the truck for some six months and 9,000 miles is inconsistent with a theory of rejection; and (5) the defects complained of were too insubstantial to justify rejection. We disagree.

■ "Rejection of goods must be within a reasonable time after their delivery or tender." U.C.C. § 2–602(1). What is a reasonable time, however, is generally deemed a question of fact to be resolved by the factfinder. *See Land v. Huffman Manufacturing Co.*, 420 F.Supp. 459 (M.D.Ala. 1976); *Newton v. Burks*, 139 Ga.App. 617, 229 S.E.2d 94 (1976); *Lish v. Compton*, 547 P.2d 223 (Utah 1976); *cf. Necho Coal Co. v. Denise Coal Co.*, 387 Pa. 567, 128 A.2d 771 (1957) (interpreting reasonable time provision of Uniform Sales Act). Instantly, the trial was before a judge without a jury and, accordingly, our scope of review is limited to a determination whether the court's finding that appellee rejected within a reasonable time is supported by competent evidence. *See Lawner v. Engelbach*, 433 Pa. 311, 249 A.2d 295 (1969); *E. I. du Pont de Nemours & Co., Inc. v. Berm Studios, Inc.*, 211 Pa.Super. 352, 354, 236 A.2d 555, 556 (1967); 9 Stand.Pa.Prac., ch. 40, § 107 at 430 (1962).

6. U.C.C. section 2–602(2)(a) states that "after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller." Section 2–606(1)(c) provides that a buyer may be deemed to have accepted an item of goods if he "does any act inconsistent with the seller's ownership." Official comment no. 4 to section 2–606 states that: "Under paragraph (c) [of 2–606], any action taken by the buyer which is inconsistent with his claim that he has rejected the goods, constitutes an acceptance." Despite the fact that section 2–606 explains what constitutes acceptance, a claim of rejection is thus a condition precedent to analysis under the "inconsistent conduct" provisions of both sections. Accordingly, we make no attempt to treat the sections individually in our discussion of this issue.

Section 1–204 of the U.C.C. provides that "a reasonable time for taking any action depends upon the nature, purposes and circumstances of such action." *See e. g., Cardwell v. International Housing, Inc.*, 282 Pa.Super. 498, 423 A.2d 355 (1980); *Carl Beasley Ford, Inc. v. Burroughs Corp.*, 361 F.Supp. 325 (E.D.Pa.1975); *cf. Franz Equipment Co. v. The Leo J. Butler Co.*, 370 Pa. 459, 467–68, 88 A.2d 702, 707 (1952) (interpreting comparable "reasonable time" provision of Uniform Sales Act). Thus, for example, in the *Franz Equipment Company* case, where the defendant purchased a hoist for use at a construction site and then eventually refused to pay when the hoist proved defective and the plaintiff seller was unable to repair it after having promised to do so, our supreme court affirmed the judgment in favor of the defendant stating:

Here it could not fairly be ascertained by defendant whether the hoist fulfilled the requirements of the contract until it had been tested by actual operation. The tests which were employed revealed defects of various kinds, and *defendant properly gave to the manufacturer the opportunity to make such adjustments, repairs and replacements as might correct them; it was only after all such attempts were ineffectual that defendant became obliged to notify plaintiff of its election to rescind the sale.*

*Id.*, 370 Pa. at 467, 88 A.2d at 707 (emphasis added). *Accord, Carl Beasley Ford, Inc. v. Burroughs Corp.*, 361 F.Supp. 325 (buyer of a computer did not fail to make timely rejection where buyer was assured that difficulties with computer would be rectified by a particular date and notice of rejection was given when time for performance had passed and problems remained).

Instantly, appellee detected problems with the truck during his test drive and communicated to appellant his expectation that they would be alleviated. As each additional problem surfaced, appellee was assured that it would be remedied. Appellee continually returned the truck to Clifford Motors so that appropriate repairs could be made.

While there was some evidence that appellee was advised that the defective doors could not or would not be repaired, there is no evidence to justify a conclusion that he was similarly advised regarding the marred finish, the abnormally low gas mileage, the vibrating front end, or the lack of engine power sufficient to enable the truck to negotiate a hill.

Thus, based upon appellee's testimony at trial, the court reasonably could have concluded that, from January 1977 until on or about May 5, 1977, the date on which appellee's complaint was filed, Yates was awaiting the repairs which had been promised by appellant's salesman at the time he first took delivery. On cross-examination, for example, counsel for Clifford Motors asked Yates the following question: "If the vehicle was not going to be repossessed, if they hadn't come to get it [in July of 1977], what was your intention to do with the vehicle?" (N.T. 31). Appellee responded thus:

> They were supposed to be taking care of the vehicle. That is what I was waiting on. The bank said that he would take care of it. I was waiting for the owner of [Clifford] Motors or somebody to fix the vehicle the way it should be. That's why I kept the vehicle.

(N.T. 31). It is the function of the factfinder to pass upon the credibility of witnesses and to weigh the evidence. *See Burbage v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 249 A.2d 563 (1969); *Leibowitz v. Ortho Pharmaceutical Corp.*, 224 Pa.Super. 418, 307 A.2d 449 (1973). Thus, it is of no moment that we might have been impelled to reach a contrary conclusion had we been confronted with this issue in the first instance. It is sufficient for us to note at this juncture that, if believed, the above evidence amply supports the conclusion that it was not unreasonable for appellee to wait some four to five months prior to rejecting the truck.

Appellant also contends that appellee's rejection was ineffective since he failed to give notice of such rejection to appellant. We disagree. Rejection "is ineffective unless the buyer seasonably notifies the seller." U.C.C. § 2–602(1). A party gives notice "to another by taking such steps as may

be reasonably required to inform the other in ordinary course." U.C.C. § 1–201(26). "A person has 'notice' of a fact when . . . from all the facts and circumstances known to him at the time in question he has reason to know that it exists." U.C.C. § 1–201(25). Instantly, appellee made appellant aware of every defect of which he complained.[7] In addition, he made no payments on the purchase of the truck and advised the Jermyn Bank that none would be forthcoming unless the problems were corrected.[8] Ultimately, appellee filed a complaint in assumpsit requesting damages or,

7. In this regard, we note the underlying policy of U.C.C. section 2–605, entitled "Waiver of Buyer's Objections by Failure to Particularize." That section provides, in pertinent part, that,

(1) The buyer's failure to state in connection with rejection a particular defect which is ascertainable by reasonable inspection precludes him from relying on the unstated defect to justify rejection or to establish breach

(a) where the seller could have cured it if stated seasonably. U.C.C. § 2–605(1)(a). Comments 1 and 2 to Code section 2–605 explicate the policy behind this provision.

1. This present section rests upon a policy of permitting the buyer to give a quick and informal notice of defects in a tender without penalizing him for omissions in his statement, while at the same time protecting a seller who is reasonably misled by the buyer's failure to state curable defects.

2. Where the defect in a tender is one which could have been cured by the seller, a buyer who merely rejects the delivery without stating his objections to it is probably acting in commercial bad faith and seeking to get out of a deal which has become unprofitable. Subsection (1)(a), following the general policy of this Article which looks to preserving the deal wherever possible, therefore insists that the seller's right to correct his tender in such circumstances be protected.

The facts in the instant case belie any assertion that appellant was prevented from effecting a "cure" by lack of notice. Appellant had at least a five month period during which to cure the defects prior to the date on which appellee's complaint was filed.

8. While we do not agree that appellee accepted the truck we note that a similar "notice" provision prevails where a buyer has already accepted the tendered goods.

[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.

U.C.C. § 2–607(3)(a). As concerns both the time of notification and the content of such notice, official comment no. 4 to U.C.C. section 2–607 provides, in pertinent part, as follows:

alternatively, the return of the Dodge Aspen which he had used as a trade-in, in return for which, appellee desired to return the defective truck.[9] Since the U.C.C. is to "be liberally construed and applied," U.C.C. § 1–102(1), and given the circumstances of this case, we conclude that the complaint filed on May 5, 1977 was adequate notice that the truck was then being rejected.[10]

▇▇▇▇ Appellant further insists that appellee failed to effectively reject because he made no offer to return the

The time of notification is to be determined by applying commercial standards to a merchant buyer. "A reasonable time" for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.

*The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. . . . The notification . . . need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.* U.C.C. § 2–607, Official Comment No. 4 (emphasis added). *See, e. g., Lynx, Inc. v. Ordnance Products, Inc.,* 273 Md. 1, 12, 327 A.2d 502, 511 (1974).

Since appellant ultimately repossessed the truck because of appellee's failure to make the required payments, appellant was at least aware that "the transaction [was] still troublesome" throughout the entire period of nonpayment.

9. Appellee's complaint concluded with the following prayer for relief:
WHEREFORE, Plaintiff requests damages against Defendant in the amount of Six Thousand Three Hundred Fifty and 00/100 ($6,350.00) Dollars plus costs and interest, or as an alternative, *Plaintiff requests to return the said defective truck and truck title to the Defendant and that the Defendant return the 1976 Dodge Aspen RT taken by Defendant as a trade-in* and that the Defendant refund to the Plaintiff all cash paid toward financing of the said truck plus interest and costs.
Complaint in Assumpsit at 3 (emphasis added).

10. *See Fenton v. Contemporary Devlpt. Co.,* 12 Wash.App. 345, 529 P.2d 883 (1974) (commencement of action to rescind is sufficient notice of revocation of acceptance). *See also Marks v. Lehigh Brickface, Inc.,* 19 D. & C.2d 666 (C.P.Dauph.1959) (buyer's refusal to permit seller to make repairs is sufficient notice of rescission); 2 R. Anderson, Uniform Commercial Code § 2–608:16 at 245 (2d ed. 1971) (any conduct clearly manifesting a desire of the buyer to get his money back is sufficient notice to revoke). We can discern no reason to treat the filing of a complaint differently for purposes of

truck to Clifford Motors. This contention is not only factually incorrect, *see* note 9 *supra*, but also legally erroneous. U.C.C. section 2–602(2)(b) requires only that a buyer hold the goods with reasonable care to permit the seller to remove them. This section imposes no obligation to formally return the goods to the seller. *McCormick v. Ornstein*, 119 Ariz. 352, 580 P.2d 1206 (Ct.App.1978); *Testo v. Russ Dunmire Oldsmobile, Inc.*, 16 Wash.App. 39, 554 P.2d 349 (1976). Instantly, appellee testified that the truck was parked in his front yard during the months of April and May of 1977. (N.T. 29). The truck was in that same location when it was repossessed in July, 1977, and since there was no allegation that appellee in any way sought to prevent appellant from regaining possession of the truck, we can only conclude that appellee complied with the mandate of section 2–602.

 Appellant also asserts that appellee's conduct with respect to the truck was inconsistent with his rejection of the same since he retained possession of the truck for approximately six months and allegedly travelled some 9,000 miles. We disagree. We have already concluded that notice of appellee's rejection was effectively communicated on or about May 5, 1977, the date on which appellee filed his complaint. Section 2–602(2)(a) and 2–606(1)(c) refer only to inconsistent acts occurring *after* a claimed rejection.[11] Thus, only appellee's use of the truck from May 5, 1977 until the first week of July, 1977, the approximate time of repossession, is pertinent to our determination whether he acted in a manner consistent with his rejection of the truck.[12]

rejection than is the custom with either revocation of acceptance or rescission.

11. *See* note 6 *supra*.

12. Even had we not reached this conclusion, we have already noted that the trial court could reasonably have concluded that appellee's use of the truck prior to May of 1977 was reasonable and thus not inconsistent with appellant's rights since appellee was operating on a rational assumption based upon the assurance of appellant's salesman that the truck would be repaired.

While indicating a pattern of frequent use *prior to* May 5, 1977, the evidence adduced at trial established that the truck was used only sparingly *following* that date and only for such essential purposes as trips to the grocery store. (N.T. 29, 30, 36). Having exchanged his automobile for value toward the purchase price of the truck appellee had no other means of transportation. We do not believe that it would serve the ends of justice to penalize a consumer who exercises his right to reject by prohibiting that consumer from even the slightest use of the goods involved until the conclusion of litigation.[13] This is particularly true where, as here, the "goods" in question, motor vehicles, have become such an essential means of transportation for even disadvantaged members of our society because of the mobility mandated by modern living conditions. Moreover, under U.C.C. section 2–711, a buyer who has rightfully rejected has a

13. To be distinguished from the instant case is *Marbelite Co., Inc. v. Phila.*, 40 D. & C.2d 347 (C.P.Phila.1966), *aff'd per curiam*, 208 Pa.Super. 256, 222 A.2d 443 (1966). In *Marbelite*, the plaintiff manufacturer sued the city of Philadelphia to recover the purchase price of various traffic signals and signal equipment sold to and used by the city. Despite the city's long term use of the equipment, it apparently made no payments on the equipment and gave no notice of any difficulty to plaintiff. After plaintiff filed its action for the price, the city claimed that it had not accepted the equipment because, *inter alia*, improprieties had occurred in the bidding process by which plaintiff secured the contract and the equipment allegedly failed to meet certain specifications.

The trial court ruled that the city's use of the signals was inconsistent with plaintiff's ownership and thus constituted acceptance under U.C.C. section 2–606. *Id.* at 349. Pivotal to this conclusion, however, was the fact that the city had never complained of any problems prior to the commencement of the lawsuit, the city failed to counterclaim or otherwise plead any item of damage, the city at no time sought to rescind the contract, nor did it offer to return the equipment. *Id.* at 350. In finding acceptance from use by the city the court thus aptly noted that the city's position "appear[ed] to be that, even though it ha[d] used the equipment for a long period of time and ha[d] suffered no harm, it [was] not obligated to pay any sum to plaintiff. *Id. See generally F. W. Lang v. Fleet*, 22 D. & C.2d 361 (C.P.Phila.1960), *aff'd per curiam*, 193 Pa.Super. 365, 165 A.2d 258 (1960) (use of ice cream freezer and compressor unit to operate air conditioner was inconsistent with seller's ownership rights and thus where, *inter alia*, an unreasonable period of time had elapsed, contract could not be rescinded).

security interest in the goods in his possession to the extent of any payments made. Such a buyer may retain the goods and even sell them to recover the value of his security interest. Instantly, although appellee made none of his required monthly payments, he nonetheless retained a security interest for approximately $2,700, the value of the automobile that he traded in on the truck. To this extent, appellee's use of the truck subsequent to the filing of his complaint and prior to appellant's repossession must be deemed reasonable and not inconsistent with his rejection of the truck. However, the trial court failed to consider by what amount, if any, appellee's use exceeded his security interest in the truck.[14] The court simply awarded appellee the entire value of the trade-in together with interest without adjusting that value in relation to the reasonable use. Accordingly, we find it necessary to remand to enable the trial court to adjust its verdict accordingly.

▇▇▇▇ Appellant's final point in support of his position that appellee failed to effectively reject is that the defects complained of were too insubstantial to warrant rejection. *See* Brief for Appellant at 8. This argument is patently untenable in light of the evidence adduced at trial. Of greater significance, however, is appellant's attempt to commingle the requirements of revocation of acceptance pursuant to U.C.C. 2–608 and the requisites of rejection under 2–602. Whereas revocation of acceptance is justified *only* where the value of the tendered goods is "substantially

14. A buyer who rightfully rejects may be entitled to consequential and/or incidental damages in addition to recovering the price. *See* U.C.C. §§ 2–711, 2–715. The cost of substitute transportation necessitated by one's inability to operate a rejected motor vehicle could be deemed an item of damage recoverable pursuant to those Code sections. *See, e. g.,* Williston on Sales, 4th ed. § 25–12 (1974). If this were true in the instant case, the verdict might well have been appropriate and thus would not require modification. We neither state nor intimate an opinion on the validity of this argument, however, since, with the exception of appellee's statement that the defective truck was his only means of transportation, N.T. 36, no evidence was adduced at trial regarding this or any other item of damage sustained by appellee. Since we have no basis from which to reach a conclusion regarding the manner in which the trial court arrived at the instant verdict, a remand on this issue is appropriate.

impaired" as to the buyer, *see* U.C.C. section 2–608(1), no such requirement obtains for rejection under U.C.C. section 2–602. *See, e. g.,* Priest, *Breach and Remedy for the Tender of Nonconforming Goods Under the Uniform Commercial Code: An Economical Approach,* 91 Harv.L.Rev. 960, 978 (1978). Thus, even assuming, *arguendo,* the validity of appellant's contention regarding the extent of defects in the truck, it would have no effect on our disposition of this case.

Appellant's second principal contention is that appellee failed to revoke his acceptance. Instantly, the trial court concluded only that appellee "*would have been entitled to revoke* his acceptance." Slip op. at 7 (emphasis added). The court did not determine that appellee in fact revoked his acceptance pursuant to U.C.C. section 2–608. We need not resolve this issue, however, because we have concluded that appellee never accepted the truck. *See* U.C.C. section 2–606.

Appellant's final contention on this appeal is that Chrysler Corporation was improperly dismissed from the action between Walter Yates and Clifford Motors. In its brief, appellant stated that, "[T]he Honorable Judge presumably based his decision on the presence of defect [sic] in the vehicle. . . . Chrysler expressly warranted the vehicle and the warranty was admitted into evidence. The defects which found a basis in the Lower Court's decision are a breach of that expressed warranty." Brief for Appellant at 11. This argument, however, is not supported by the record. The trial court did not base its decision on a breach by Chrysler of an *express* warranty. The trial court concluded that Yates never accepted the truck because of a breach of the *implied* warranty of merchantability. Slip op. at 2.

 Even accepting, *arguendo,* that an express warranty was involved, our reading of the record makes it abundantly clear that the only express warranties which could arguably have served as a basis for the court's decision were the repeated assurances by Clifford Motors that the truck's defects would be corrected. *See* Slip op. at 5. "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the

basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." U.C.C. § 2–313(1)(a). Thus, to be effective, an express warranty must have served as at least part of the basis for the bargained-for-exchange. Chrysler's warranty does not, however, appear to have served as such. Notwithstanding Chrysler's warranty, appellee would never have taken delivery of the vehicle if he had not been assured by Clifford Motors that the vehicle would be repaired. *See* note 5 *supra.* In these circumstances, therefore, where the vehicle was never accepted, the warranty, if any, that accompanied the sale of the defective truck can be of no legal effect as regards the action between Clifford Motors and Walter Yates. Accordingly, Chrysler was properly dismissed.[15]

Therefore, we affirm the trial court's verdict as to the liability of appellant. We reverse and remand, however, on

15. This conclusion is not, moreover, in conflict with our prior rulings regarding privity and warranties. In *Klages v. Gen. Ordnance Equip. Corp.*, 240 Pa.Super. 356, 367 A.2d 304 (1976), we posited that,
 Under old privity doctrines, the consumer could sue only his immediate seller. If the seller was found liable, he could then separately sue the manufacturer on the latter's express warranty to him. In *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968), our Supreme Court eliminated traditional privity theory in warranty actions, thereby enabling the consumer to sue the manufacturer directly. One of the policy reasons advanced by the Court for this change was the elimination of the duplicitous litigation which resulted from the privity requirement. Thus, it was envisioned that the consumer would sue both the manufacturer and the retailer simultaneously. *It follows that when the retailer does not give the consumer a separate and independent express warranty, and when the manufacturer gives an identical express warranty to both the retailer and consumer, the liability of the manufacturer and the retailer is identical.* If the consumer is successful in asserting breach of express warranty against the retailer, therefore, the retailer would likewise be successful against the manufacturer. In such cases, an instruction as to "liability over" is proper. *Id.* 240 Pa.Super. at 375, 367 A.2d at 314 (emphasis added). Instantly, we have already noted that Clifford Motors expressly warranted that the truck would be repaired. Chrysler Corporation can have no legal responsibility for *Clifford's breach* of *its own warranty* to repair. While Clifford may have a claim against Chrysler based upon Chrysler's warranty on the truck, Chrysler and Clifford did not share identical liability as to Walter Yates. Accordingly, our decision in *Klages* in inapposite to the instant case.

the issues of damages, limiting the remand to the sole determination whether or not appellee's use of the vehicle exceeded his security interest therein. The aggrieved party may thereafter file a new appeal from this determination.