J.L. CLARK MANUFACTURING
CO., Plaintiff,

v.

GOLD BOND PHARMACEUTICAL
CORPORATION, Defendant.

Civ. A. No. 86–0372 L.

United States District Court,
D. Rhode Island,
First Division.

Sept. 15, 1987.

Vetter & White, Providence, R.I., Denis V. Brenan and Glen Stuart, Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Abraham Belilove, Belilove, Arcaro & Kolodney, Providence, R.I., for defendant.

MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is before the Court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The plaintiff, J.L. Clark Manufacturing Co. (Clark), seeks to recover the contract price of metal containers manufactured for and delivered to defendant Gold Bond Pharmaceutical Corporation (Gold Bond), plus costs and attorneys' fees. By way of affirmative defenses and counterclaims, Gold Bond asserts that Clark breached various express and implied warranties and acted negligently in the manufacture of the cans. Gold Bond seeks to recover damages for, *inter alia*, lost profits and loss of goodwill. Presently pending before the Court is Clark's motion for entry of partial summary judgment in its favor pursuant to Fed.R. Civ.P. 56.

Gold Bond, as was its predecessor in interest, is engaged in the manufacture and sale of Gold Bond pharmaceutical powder. Over a period of years, defendant's predecessor purchased metal cans from Clark for the packaging of its product. In April 1984, the powder company was acquired by defendant. Gold Bond continued to purchase metal containers, consisting of powder bodies and covers, from Clark.

On or about November 9, 1984, Gold Bond ordered 250,000 four ounce powder bodies and covers and 250,000 ten ounce powder bodies and covers for a total contract price of $172,523.09. It is undisputed that Gold Bond received delivery of the containers and began to use them in the packaging and distribution of its product. Invoices for the goods were issued by Clark in February 1985. Gold Bond, alleging that the containers were defective, refused to remit payment.

In a letter to Clark's sales representative, dated April 18, 1985, William Garey, president of Gold Bond, identified certain problems which defendant had allegedly encountered with the cans. First, jagged edges on some covers and bodies inhibited proper attachment of the two components. Second, the bottoms of some cans were improperly attached, permitting powder leakage. Garey stated that not all defects could be detected prior to filling. As a result, filled containers were shipped to retailers, only to be subsequently returned to Gold Bond for credit and reimbursement of shipping charges. Third, the color of the covers did not match those of the bodies.

By letter dated May 8, 1985 and hand-delivered to Garey on May 9, 1985, Clark's president, William O. Nelson, requested that Gold Bond either immediately cease use of the containers and return them to Clark or pay all outstanding invoices. Gold Bond, however, while refusing to remit payment, continued to utilize the cans in the distribution and sale of its product. In fact, it is undisputed that Gold Bond continued to use the cans in its production process until at least February 1986. Defendant contends that such continued use was necessitated by the unavailability of alternative containers in which to market its powder.

As affirmative defenses and counterclaims Gold Bond has alleged that the cans, as manufactured, did not conform to various express and implied warranties which were part of the contract between the parties. Specifically, Gold Bond contends that Clark, through oral representations made by its sales agents, expressly warranted that the containers would prevent leakage or spillage of powder, that the bodies and covers, when attached, would create a smooth and even appearance which plaintiff knew defendant required for merchandising and display purposes and that the colors of the bodies and covers would match, a requirement of Gold Bond's merchandising efforts. Gold Bond further alleges that Clark breached warranties of merchantability, fitness for a particular purpose and its warranty that the bodies

and covers would conform to certain specifications as given in a sample or model. Gold Bond also contends that Clark acted negligently in the manufacture of the containers.

Clark seeks entry of partial summary judgment in its favor on its claim for the purchase price of $172,523.09, plus interest; on Gold Bond's first counterclaim, which alleges breach of various warranties, to the extent that the counterclaim is based upon the above-described alleged express warranties concerning leakage, smoothness of appearance and coloration; on defendant's second counterclaim, which alleges negligence; and on Gold Bond's request for damages for loss of good will, restoration of good will and loss of future profits.

A hearing on plaintiff's motion and defendant's objection thereto was conducted by this Court on June 25, 1987. At that time, Gold Bond advised the Court that it had elected not to pursue its affirmative defense of and counterclaim for negligence. After hearing, the matter was taken under advisement by this Court and is now in order for decision.

■ The parties agree that the substantive law of Pennsylvania governs their contractual relationship. Pursuant to § 2–607 of the Uniform Commercial Code as adopted by Pennsylvania, 13 Pa.Cons.Stat. Ann. § 2607(a) (Purdon 1984) a buyer must pay at the contract rate for any goods accepted. Section 2–606(1), 13 Pa.Cons. Stat.Ann. § 2606(a)(3) (Purdon 1984), provides that "[a]cceptance of goods occurs when the buyer * * * (c) does any act inconsistent with the seller's ownership." Under this subsection, any action taken by the buyer which is inconsistent with its claim that it has rejected the goods constitutes an acceptance. U.C.C. § 2–606 comment 4. Having examined the undisputed, material facts in view of § 2–606(1)(c), this Court concludes that, as a matter of law, Gold Bond accepted the containers.

Gold Bond continued to fill and sell the containers until at least February 1986. Defendant ceased use of the cans when plastic packaging became available. Gold

Bond's continued use of the containers for approximately one year after its purported rejection and in contravention of Clark's May 1985 request that the cans be returned is patently inconsistent with the seller's ownership.

Defendant's contention that business considerations mandated continued use of the containers does not require a different conclusion. In substance, Gold Bond argues that, upon encountering difficulties with Clark's product, it had no alternative, if Gold Bond was to remain in business, but to continue to utilize the metal containers until substitute packaging, in this case plastic containers, was designed and manufactured. It is undisputed that Gold Bond ceased use of Clark's cans once this alternative packaging became available. Gold Bond contends that, in view of the lack of an alternative means of maintaining production, continued use of the metal containers was reasonable and did not invalidate its alleged earlier rejection.

Assuming, *arguendo*, that earlier discontinuation of use of Clark's containers would have resulted in the cessation of defendant's business activities, such a predicament does not legitimate the equivocal rejection attempted in the instant matter by Gold Bond. The cases cited by defendant in support of its argument are factually distinguishable from the instant matter and are thus unpersuasive here.

In *Yates v. Clifford Motors*, 283 Pa.Super. 293, 423 A.2d 1262 (1980), the court held that a buyer's continued use of a truck for approximately two months after communication of his rejection of the vehicle was not inconsistent with rejection. Although the buyer had used the vehicle frequently prior to notifying the seller of his rejection, following that date the vehicle was used only sparingly and only for essential purposes. The vehicle served as the buyer's only means of transportation. The court concluded that the ends of justice would not be served by penalizing a consumer who had exercised his right to reject by prohibiting the consumer from even the slightest use of the goods involved until the conclusion of the litigation. *Id.* at 311, 423 A.2d at 1271. The court found that such reasoning was particularly applicable when, as in that case, the goods involved, such as motor vehicles, were essential to modern life. *Id.* at 311, 423 A.2d at 1271–72. Further, in *Yates* the buyer possessed a security interest in the truck of approximately $2,700. Thus, at least to that extent, the buyer's continued use of the vehicle was deemed reasonable and not inconsistent with rejection. *Id.* at 312, 423 A.2d at 1272.

In *Cardwell v. International Housing*, 282 Pa.Super. 498, 423 A.2d 355 (1980), the court, although ultimately determining that the buyers had reaccepted a mobile home despite their earlier revocation, held that the buyers' continued residence in the home was not conclusive in determining whether they intended to abide by their revocation. The court cited with approval *Fablok Mills v. Cocker Machine & Foundry Co.*, 125 N.J.Super. 251, 310 A.2d 491, *cert. denied* 64 N.J. 317, 315 A.2d 405 (1973).

In *Fablok*, a buyer revoked acceptance of ten manufacturing machines. After revocation, the buyer continued to use some of the machines. The court held that such conduct did not preclude successful assertion of buyer's claim of revocation. The court stated that, under the circumstances, such actions were not unreasonable as a matter of law. Specifically, the lack of availability of alternative machinery left the buyer "with the grim choice of either continuing to use some of the machines or going out of business." *Id.* at 258, 310 A.2d at 495.

Although the above-cited cases demonstrate that, under certain circumstances, an otherwise valid and timely rejection or revocation of acceptance will not be rendered ineffective by a buyer's continued use of the goods, all three cases are distinguishable from the instant matter in that they did not involve use of disposable goods. In *Yates, Cardwell* and *Fablok*, despite some delay, and possibly depreciation, the goods remained available for eventual return to the seller. In fact, in *Fablok*, in holding that the buyer's continued use of the ma-

chinery did not negate its claim of revocation, the court relied, *inter alia*, on the seller's failure to contact the buyer concerning return of the goods and its failure to demonstrate that it had been prejudiced by the buyer's continued use of the machines. *Id.* at 258, 310 A.2d at 495. In the instant matter, defendant's continued use of the containers in distributing its powder products to its retailers permanently deprived Clark of any opportunity to reacquire possession of the goods. Such conduct is unreasonable and inconsistent with both Clark's ownership and Gold Bond's purported rejection of the goods and therefore constitutes an acceptance of the containers. Accordingly, Clark is entitled to recover the contract price. U.C.C. § 2–607(1); 13 Pa.Cons.Stat.Ann. § 2607(a) (Purdon 1984). Gold Bond's remedy for plaintiff's alleged breach of any express or implied warranties is to seek recovery of damages pursuant to § 2–714(2); 13 Pa. Cons.Stat.Ann. § 2714(b) (Purdon 1984).

█ Although the Court is satisfied that, as a matter of law, Clark is entitled to entry of judgment in its favor on its claim for the contract price of the containers, the Court concludes that genuine issues of material fact exist concerning Gold Bond's counterclaim for Clark's alleged breach of the previously described express warranties. In his affidavit in opposition to Clark's motion for partial summary judgment, Garey averred that Gold Bond, in placing the order which forms the basis for this dispute, relied on oral assurances rendered by one of Clark's sales representatives, Ralph Best. According to the affidavit, in the summer of 1984, shortly after defendant acquired the powder company, Best assured Garey, *inter alia*, that Clark's containers would prevent powder leakage. After Gold Bond received its first order of containers from Clark, defendant observed that some of the cans did in fact permit leakage and that the colors of some bodies and covers did not match. Garey averred that the November 1984 order, which is the subject of this dispute, was placed only after he received oral assurances from Best that the problems encountered with the earlier order would be corrected. Garey's affidavit thus sets forth facts which support Gold Bond's allegation that certain express warranties concerning the containers were made by Clark and were part of the agreement between the parties. Accordingly, plaintiff's motion for partial summary judgment, to the extent Clark seeks entry of judgment in its favor on defendant's express warranty claims, is denied.

Finally, Clark seeks entry of partial summary judgment in its favor on Gold Bond's request for damages for loss of good will and loss of future profits. However, a determination of what damages Gold Bond may recover in the event that it prevails on its remaining counterclaim is an issue more appropriately reserved for trial.

Accordingly, the motion of J.L. Clark Manufacturing Co., for entry of partial summary judgment on Clark's claim for the contract price of the containers is granted. Any award of interest, costs or attorney's fees will be made at the conclusion of trial. By agreement of the parties, Gold Bond's second counterclaim is dismissed. Clark's motion is denied in all other respects.

*It is so Ordered.*